IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

       Plaintiff,

vs.                                                         Case No. CR 05-2051

ROBERT VIGIL,

       Defendant.

MEMORANDUM OPINION AND ORDER

On March 14, 2006, Defendant filed "Mr. Vigil's Motion to Dismiss Certain Hobbs Act Counts in Third Superseding Indictment for Failure to Charge Crimes Under Fed. R. Crim. P. 12" (Docket No. 109). In his motion, Defendant argued that Counts Twenty-Six and Twenty-Seven of the Third Superseding Indictment should be dismissed for failure to adequately allege an essential element of extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951 ("the Hobbs Act"). In particular, Defendant challenged the language contained in Counts Twenty-Six and Twenty-Seven of the Third Superseding Indictment which alleged that Defendant obtained payment from Kent Nelson "in connection with NELSON's efforts to obtain more business from the New Mexico State Treasurer's Office." (Docket No. 87 at 24-25). Defendant argued that this language failed to allege the existence of a *quid pro quo* in light of the requirements detailed in the Court's February 3, 2006 Memorandum Opinion and Order. (Docket No. 79).

On March 21, 2006, the grand jury returned a Fourth Superseding Indictment. (Docket No. 133). Counts Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment now

allege that Defendant obtained payment from Kent Nelson "knowing that the payment was made in return for official action." (Docket No. 133 at 24- 25).  Since Counts Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment no longer contain the language previously challenged by Defendant, Defendant's motion is now moot and should be denied.  Moreover, even if Defendant's motion were not moot, the Court finds that the motion should be denied on its merits.

### I.  Background and the Quid Pro Quo Requirement

On February 3, 2006, the Court entered a Memorandum Opinion and Order which dismissed, without prejudice, Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment for failure to adequately allege the existence of a *quid pro quo*.  (Docket No. 79). As delineated in the Court's prior Memorandum Opinion and Order, an indictment charging a defendant with extortion under color of official right in violation of the Hobbs Act must allege the existence of a *quid pro quo*.  The *quid pro quo* requirement was first detailed by the United States Supreme Court in *McCormick v. United States*, 500 U.S. 257 (1991).  In *McCormick*, the Supreme Court held that an elected official's receipt of campaign contributions constitutes extortion under color of official right "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *Id.* at 273. Thus, in a prosecution for extortion under color of official right under the Hobbs Act, the government must prove that the payments were made in return for an "explicit promise" by an official to perform official acts.  This "explicit promise" by the official is the *quid pro quo*.

In *Evans v. United States*, the Supreme Court found that the existence of *quid pro quo* may be established by "the Government [showing] that a public official has obtained a payment to

which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States,* 504 U.S. 255, 268 (1992). As Justice Kennedy put the issue, "[t]he official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. The inducement from the official is criminal if it is express or if it is implied from his words and actions, so long as he intends it to be so and the payor so interprets it." *Id.* at 274 (Kennedy, J., concurring). The Supreme Court's opinion in *Evans* also expanded the *quid pro quo* requirement to all prosecutions for extortion under color of official right in violation of the Hobbs Act. *Id.* at 268. Thus, *McCormick* and *Evans* established that, before a defendant may be convicted of extortion under color of official right, the government must prove that an official accepted a payment to which the official was not entitled while knowing that the payment was made in return for official action.

The Court found in its Memorandum Opinion and Order that Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment failed to adequately allege the existence of a *quid pro quo* primarily because the neither the factual nor the linguistic aspects of those counts suggested that Defendant understood that the payments he obtained from Kent Nelson were made in return for official action. In other words, neither the facts alleged nor the language used by the Second Superseding Indictment suggested that Defendant knew that he was accepting a bribe from Kent Nelson. The Court was therefore unable to infer that Defendant's acceptance of the payment from Kent Nelson constituted a promise to perform official acts in return for the payment. Consequently, the Court could not be assured that the grand jury found probable cause to support all the essential elements of extortion under color of official right. The Court accordingly dismissed Counts Twenty-Five and Twenty-Six without prejudice.

The grand jury subsequently returned a Third Superseding Indictment and a Fourth Superseding Indictment charging Defendant with the conduct which was the basis of the charges in Counts Twenty-Five and Twenty-Six in the Second Superseding Indictment. Defendant asserts that the deficiencies of the Second Superseding Indictment were carried over to the new indictment. The Court therefore will evaluate the sufficiency of the Fourth Superseding Indictment using the legal standards enunciated in the Court's February 3, 2006 Memorandum Opinion and Order. (Docket No. 79).

## II. *Sufficiency of the Fourth Superseding Indictment*

The Court finds that the Fourth Superseding Indictment adequately alleges the existence of a *quid pro quo*. The language in the Fourth Superseding Indictment expressly alleges the existence of a *quid pro quo* by charging that Defendant obtained a payment from Kent Nelson "knowing that the payment was in return for official action." (Docket No. 133, at 25). Moreover, the Fourth Superseding Indictment would also adequately allege the existence of a *quid pro quo* even if this language was not in the indictment. Courts "do not insist that any particular word or phrase be used in stating an essential element" of an indictment. *United States v. Kilpatrick*, 821 F.2d 1456, 1463 (10th Cir. 1987)*, cert. granted in part*, 484 U.S. 1003 (1988), *and aff'd*, 487 U.S. 250 (1988). The Fourth Superseding Indictment adequately avers the existence of a *quid pro quo* through relevant factual allegations.

Count Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment expressly incorporate prior allegations made in the indictment. Count Twenty-Six incorporates paragraphs 1 through 6 of the Introduction to the indictment, and also incorporates paragraphs 2, 6, and 39 through 46 of Count One. Paragraphs 39 through 46 of Count One allege that:

> On or about May 2, 2005, Kent Nelson traveled from San Diego, California, to Albuquerque, New Mexico for the purpose of meeting the defendant Robert Vigil. On the same date, the defendant Robert Vigil met Kent Nelson at the Albuquerque International Sunport and drove him to an Albuquerque restaurant. In the parking lot outside the restaurant, Kent Nelson handed the defendant Robert Vigil approximately $ 1,500 in cash, some of which the defendant Robert Vigil, stated, in substance, that he would use for his brother. Kent Nelson then asked the defendant Robert Vigil, in substance, for a commitment to direct New Mexico State Treasurer's Office business to him. The defendant Robert Vigil answered, in substance, that the New Mexico State Treasurer's Office would next do business in June 2005. Kent Nelson replied, "you don't have anything right now?", [sic] handed the defendant Robert Vigil a quantity of United States currency, and stated "there's ten thousand." The defendant Robert Vigil accepted the money, replying, in substance, that there would be work in one more month, and that he, that is, the defendant Robert Vigil, would give some of the money to his brother. Later in the course of the same conversation, the defendant Robert Vigil told Kent Nelson, in substance, that the New Mexico State Finance Authority might authorize a flexible repurchase agreement as early as the following week, and that bond proceeds would be available for investment as well. The defendant Robert Vigil, referring to these two sources of possible investment advisor work, told Kent Nelson, in substance, that he would try to direct one of the two jobs to Nelson.

(Docket No. 133, at 17-18).

Count Twenty-Seven of the Fourth Superseding Indictment expressly incorporates paragraphs 1 through 6 of the Introduction, and paragraphs 2, 6, and 48 through 58 of Count One. Paragraphs 48 through 58 of Count One allege that:

> On or about August 24, 2005, Kent Nelson traveled from San Diego, California, to Albuquerque, New Mexico, for the purpose of meeting the defendant Robert Vigil. On the same date, the defendant Robert Vigil met Kent Nelson at the Albuquerque International Sunport and drove him to an Albuquerque area racetrack. In the parking lot outside the race track, Kent Nelson offered the defendant Robert Vigil approximately $ 5,000 in cash, commenting, in substance, that the last financial transaction that he, i.e. Nelson, had engaged in on behalf of the New Mexico State

> Treasurer's Office had not been very big. The defendant Robert
> Vigil answered, in substance, that $ 5,000 was too much.
> Kent Nelson replied, in substance, that $ 5,000 was proportionally
> less than the amount of fees that Nelson typically transferred to
> Angelo Garcia after Nelson performed financial transactions on
> behalf of the New Mexico State Treasurer's Office. The defendant
> Robert Vigil answered, in substance, that he wanted Nelson to
> write checks to some people for him. Kent Nelson replied "but you
> know what I want, Robert? I want a bigger deal," requesting, in
> substance, that the defendant Robert Vigil provide him with a larger
> financial transaction to perform on behalf of the New Mexico State
> Treasurer's Office. In the course of the conversation, the defendant
> Robert Vigil solicited payment of $ 2,000 in cash from Kent
> Nelson, stating in substance that he would use the money for a fund
> raiser the following day. In response to this solicitation, Nelson
> counted out nineteen one-hundred dollar bills and handed them to
> the defendant Robert Vigil. In the further course of the
> conversation, the defendant Robert Vigil solicited Kent Nelson to
> write checks to other persons or organizations on behalf of the
> defendant Robert Vigil. In the further course of the conversation,
> the defendant Robert Vigil stated, in substance, that Kent Nelson
> was now one of only two bidding agents for the New Mexico State
> Treasurer's Office, that there should be more financial transactions
> coming up, and that he, that is, the defendant Robert Vigil,
> appreciated everything that Nelson did for him.

(Docket No. 133, at 18-19). Although these paragraphs do not track the language of the *quid pro quo* requirement as detailed by *Evans*, the Court can infer from the description of the transaction between Defendant and Kent Nelson that Defendant knew the payments he received were made in return for state business. The factual description of Defendant's acceptance of the payments allows the Court to imply that Defendant promised to perform official acts in return for the payments made by Mr. Nelson. Counts Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment therefore factually allege the existence of a *quid pro quo*.

The sufficiency of Counts Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment is further demonstrated through comparison with Counts Twenty-Five and Twenty-Six

6

of the Second Superseding Indictment. Similarly to the Fourth Superseding Indictment, the Second Superseding Indictment alleged specific factual conduct by Defendant in prior counts which gave rise to various charges in the indictment. However, dissimilarly to the current indictment, the prior factual allegations in the Second Superseding Indictment were not pertinent to the charges of extortion made in Counts Twenty-Five and Twenty-Six of that indictment. Those prior factual allegations involved different dates, payments, and conduct than the dates, payments, and conduct at issue in Counts Twenty-Five and Twenty-Six. Thus any prior factual allegations were inapplicable to the crimes charged in Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment. Moreover, as is explained in the Court's prior Memorandum Opinion and Order, the language in Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment did not sufficiently allege that Defendant knew that the money he was receiving was made in return for official action. Thus, neither the language nor the factual allegations in Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment adequately alleged the existence of a *quid pro quo*. Accordingly, Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment were dismissed without prejudice.

In contrast, the expressly incorporated prior factual allegations in the Fourth Superseding Indictment are relevant to and describe the specific alleged conduct by Defendant which prompted the charges in Counts Twenty-Six and Twenty-Seven. Moreover, the language in Counts Twenty-Six and Twenty-Seven tracks the language of the *quid pro quo* requirement as detailed by *Evans*. Unlike Counts Twenty-Five and Twenty-Six of the Second Superseding Indictment, Counts Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment both factually and linguistically allege the existence of a *quid pro quo*. Therefore, the Court finds that Defendant's

motion to dismiss Counts Twenty-Six and Twenty-Seven of the Fourth Superseding Indictment should be denied.

IT IS THEREFORE ORDERED THAT "Mr. Vigil's Motion to Dismiss Certain Hobbs Act Counts in Third Superseding Indictment for Failure to Charge Crimes Under Fed. R. Crim. P. 12" (Docket No. 109) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE