IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                                          No. CR 05-2051 JB

ROBERT VIGIL,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion to Admit Into Evidence Transcripts of Recorded Conversations, filed July 10, 2006 (Doc. 247). The Court held a hearing on the motion on August 16, 2006. The primary issues are: (i) whether the Court will allow transcripts of recorded conversations the United States plans to introduce at trial to be admitted into evidence as trial exhibits; and (ii) whether the Court will require the parties to exchange copies of transcripts of recordings they intend to present in advance of trial. For the reasons stated at the hearing, and consistent with those reasons, the Court will deny the motion in part and grant the motion in part.

## PROCEDURAL BACKGROUND

In preparation for the first trial in this case, the United States provided Vigil with copies of approximately 120 audio and visual recordings of conversations on October 3, 2005. In October and November 2005, the United States provided Vigil with preliminary drafts of transcripts of these recordings. In February and March 2006, as the first trial drew near, the United States provided Vigil with updated versions of these transcripts.

Before the April 2006 trial, the parties stipulated to the admission of all recordings that the United States produced as discovery. The Honorable James A. Parker, Senior United States District Judge, pre-admitted all of the recordings into evidence. The parties were, however, unable to stipulate to the accuracy of any of the transcripts during the first trial.

During the first trial, the parties were free to publish any of these pre-admitted recordings by playing them for the jury. While the publication of these recordings accounted for a significant portion of the evidence presented at trial, the published recordings represented only a fraction of the total recordings which the United States provided to Vigil. In each instance where the United States published a recorded conversation, the United States provided the jury with a transcript of that conversation. Where Vigil challenged the accuracy of the United States' transcript, Judge Parker permitted him to provide the jury with his competing transcript.

When Vigil had his own version of a transcript of a recorded conversation that the United States was going to play at trial, he frequently provided the United States his version of the transcript moments before requesting the Court if he could submit it to the jury. Vigil's versions of the transcripts consisted of hand-written mark-ups of preliminary versions that the United States provided to Vigil early in discovery, but which had been superseded by later supplements that the United States provided. During cross-examination of the United States' witnesses, Vigil also played a number of recordings for the jury and sometimes, but not always, provided the jury with a transcript of the calls he played. Some of Vigil's versions of transcripts included handwritten marginalia that the United States considered editorial in nature. On at least one occasion, trial was delayed while Vigil redacted these editorial notations and recopied his version of the transcript for distribution to the jury.

When Vigil presented his edits of certain transcripts to the United States, there were some

instances in which the United States agreed with those edits. Because the United States did not receive these edits until just before the transcripts were submitted to the jury, it did not believe that it had adequate opportunity to review the edits and properly modify the transcripts.

Although Vigil did not object to the admission of any of the recorded conversations, he objected to the admission into evidence of any transcript of these recorded conversations. The United States did not offer the transcripts into evidence. Rather, the transcripts were used only to assist the jury while listening to the recordings during trial. The transcripts were not received in evidence, and the jury was not permitted to review the transcripts when it retired to deliberate.

During its deliberations, the jury requested that the Court allow it to review transcripts that had been provided during trial. The jury indicated that these transcripts would assist its deliberations and that the transcripts would help it find particular portions of conversations that it was having trouble locating on the recordings. In a post-trial interview, one of the jurors informed FBI Special Agent Marcus McCaskill that jurors were frustrated that they were not provided with transcripts that had been published during trial.

The United States intends to offer transcripts of recorded calls into evidence during the September 2006 trial, and files this motion to admit into evidence transcripts of recorded conversations upon the retrial of this case. The United States requests the Court to admit, subject to a proper evidentiary foundation, transcripts of the recorded conversations as trial exhibits. Further, the United States requests the Court to order the parties to exchange, in advance of trial, any transcripts of recordings they intend to offer into evidence, and to exchange any transcripts that compete with those provided by the other party. The United States does not ask, or expect, the Court to rule on the admissibility of individual transcripts until trial.

## **LAW REGARDING ADMISSION OF TRANSCRIPTS**

1. **Admissibility of Transcripts of Recorded Conversations.**

The United States Court of Appeals for the Tenth Circuit has repeatedly held the admission of transcripts for the purpose of assisting the jury in listening to portions of recorded conversations is within the trial court's sound discretion. See United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995); United States v. Mayes, 917 F.2d 457, 462-63 (10th Cir. 1990); United States v. Devous, 764 F.2d 1349, 1354 (10th Cir. 1985)("The admission of transcripts to assist the trier of fact, like the admission of tapes of marginal quality, lies within the discretion of the trial court."). In cases where the content of the recordings is disputed because the recordings are of poor quality or are partially inaudible, jurors are not "precluded from comparing the tapes with the transcript and making an independent decision about the transcript's accuracy." United States v. Devous, 764 F.2d at 1354. Cases from other Circuits are in accord. See United States v. Eberhart, 434 F.3d 935, 938-939 (7th Cir. 2006)(finding that it is not error to introduce tapes and transcripts into evidence, even when some variation between tapes and transcripts exists, when other portions of the recording support the content of the transcript); United States v. White, 219 F.3d 442, 448-49 (5th Cir. 2003)(ruling admission of transcript was not abuse of discretion when FBI agent testified as to unintelligible portions of the document and a cautionary instruction was given); United States v. Delpit, 94 F.3d 1134, 1147 (8th Cir. 1996)("It is well settled that the jury may use transcripts of wiretapped conversations during trial and deliberations.").

2. **Procedure for Admitting Transcripts.**

In United States v. Devous, the Tenth Circuit found useful guidelines issued by the United States Court of Appeals for the District of Columbia Circuit recommending procedures that trial

courts should follow when using transcripts of recorded conversations.

> The ideal procedure for testing accuracy is to have the prosecution and defense attorneys stipulate to a transcript. . . . When they cannot agree as to what is on tape [sic], the second best alternative is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes. . . . In either situation the jury receives a transcript, certified as a correct version of the tape. A third alternative is to present the jury with two transcripts, containing both sides' versions, and let the jury determine which is more accurate. . . In this situation, because no one transcript is presented as "correct," the judge "need not necessarily listen to the tapes or pass on the accuracy of any transcript."

764 F.2d at 1355 (quoting United States v. Slade, 627 F.2d 293, 302 (D.C. Cir. 1980)). Use of these procedures is appropriate whenever the parties propose to use transcripts; it is not limited to cases in which the transcripts are admitted into evidence. See United States v. Slade, 627 F.2d at 301-03 (recommending the procedures in the context of a case where transcripts were not admitted into evidence).

## ANALYSIS

### I. THE COURT WILL NOT ADMIT TRANSCRIPTS AS TRIAL EXHIBITS.

As the lessons of Vigil's first trial demonstrate, publishing transcripts of recordings to the jury might assist it in following the presentation of the evidence. That the content of some recordings is disputed because of their poor or inaudible quality is not significant. In United States v. Devous, the Tenth Circuit approved the use of transcripts in combination with tapes which were of "poor and variable quality," reasoning that, at least in that case, the recordings "were certainly not so inaudible that a juror would be precluded from comparing the tapes with the transcript and making an independent decision about the transcript's accuracy." 764 F.2d at 1354. In addition, the Court can mitigate the impact of any divergence between the recordings and the transcripts by instructing the jury that, in the event of a discrepancy between the tapes and the transcripts, the tapes control. See

id. at 1353-1354 (suggesting that such an instruction may be appropriate when there is an incongruity between the recordings and the transcripts). Given the considerable benefits inherent in using transcripts at trial, and in light of Tenth Circuit case law approving such use, the Court will allow the parties to publish transcripts of taped recordings it presents at trial.

It does not follow, however, that, as in United States v. Devous, the Court should permit the United States to introduce transcripts of recorded conversations into evidence. The Court acknowledges that transcripts may be helpful to the jury during the presentation of evidence; it is concerned, however, that the jury understand that the evidence is the recordings, not the transcripts. The Court is concerned that the jury needs to listen to the tone of voices and alleged verbal affirmations at important places in the recordings. Because admitting the transcripts into evidence may induce the jury to rely on the transcripts rather than the recordings, the Court will not admit the transcripts. This rule may make the jury's task more demanding, but will ensure that they rely on the actual evidence.

## II.   THE PARTIES SHOULD EXCHANGE THEIR VERSIONS OF TRANSCRIPTS IN ADVANCE OF TRIAL.

Because stipulation to a single version of a transcript is the preferred procedure, the United States proposes that the Court direct the parties to exchange their versions of transcripts in advance of trial to permit the possibility of negotiation over differences and agreement as to a final version. The Court understands the parties to have reached an arrangement in which Vigil's counsel will review several transcripts a day, and convey any comments or concerns regarding the content of the transcripts to the United States as the transcripts are reviewed. See Transcript of Hearing at 91:5-20 (taken August 18, 2006).

**IT IS ORDERED** that the United States' Motion to Admit Into Evidence Transcripts of Recorded Conversations is denied in part and granted in part. While the Court will not admit the transcripts as trial exhibits, the Court finds that allowing the parties to publish transcripts of recordings presented to the jury will be helpful in assisting the jury follow the presentation of evidence, and requiring the parties to exchange their versions of the transcripts in advance of trial will have the beneficial effect of avoiding several complications that encumbered the first trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
Jonathon M. Gerson
Steven C. Yarbrough
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

– and –

Sam Bregman
Eric Loman
Bregman Law Firm
Albuquerque, New Mexico

    *Attorneys for the Defendant*