# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                              No. CR 05-2051
                                                              JB

ROBERT VIGIL,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Motion in Limine Regarding Admissibility of Federal Rule of Evidence 404(B) Material, filed August 8, 2006 (Doc. 274)(the "404(B) Motion"); and (ii) Defendant Robert Vigil's Motion in Limine to Exclude Evidence of Uncharged Acts Related to Decade Old Events When Mr. Vigil was State Auditor and Response to Government's Motion Regarding Admissibility of Federal Rule of Evidence 404(B) Material, filed August 17, 2006 (Doc. 293). The Court held a hearing on these motions on August 29, 2006. The primary issue is whether the Court should permit the United States to present, pursuant to rule 404(b) of the Federal Rules of Evidence, evidence of certain uncharged crimes, wrongs, and acts that Defendant Robert Vigil allegedly committed. Because the Court does not believe that the United States has articulated a proper purpose pursuant to which such evidence might be admitted under rule 404(b), and because the Court does not believe that even if a proper purpose was found, the evidence is sufficiently probative to overcome its substantial prejudicial impact, the Court will deny the United States' motion and grant Vigil's motion.

## PROPOSED RULE 404(B) EVIDENCE

The United States intends to offer evidence of conduct in which Vigil engaged while he was the New Mexico State Auditor.  Vigil served as the New Mexico State Auditor from 1991 through 1998.  The United States represents that, during this time, he engaged in a "pay to play" operation; in other words, those who sought state contracts and were willing to pay Vigil, or to donate to political campaigns or charities of Vigil's choosing, received state contracts.  The United States characterizes this conduct as "extortion activity similar to that currently charged while [Vigil] was State Treasurer."  404(B) Motion at 4.  According to the United States, this conduct is proof of Vigil's "knowledge and intent, as well as absence of mistake, plan, pattern, preparation, and motive." Id.

The United States represents that the nature and prevalence of Vigil's activity while State Auditor was significant enough that the New Mexico Attorney General, the New Mexico State Police, and the FBI all investigated the conduct.  As a result of these investigations, the United States has obtained documents, which it has provided to Vigil in discovery, that the United States will seek to admit as proof of Vigil's conduct while State Auditor.

The first specific "pay to play" activity in which Vigil allegedly engaged relates to solicitations for political donations and payments for personal expenses that Vigil made of auditors who sought state business.  The second "pay to play" activity in which Vigil allegedly engaged relates to training seminars partially funded with state money that he used to create revenue that he could then donate to various organizations as a means of increasing his political capital.

1.      **Donations.**

The United States contends that, when Vigil first became the State Auditor, he asserted sole

control over which independent auditors would receive contracts to perform various audits for the state.  As a condition of receiving these contracts, Vigil would often require prospective auditors to donate to his political campaign or to a political campaign that he designated.  The United States offers that a witness will testify that he was present when Vigil told an independent auditor that, if the auditor did not give political contributions, he would not receive state work.

The same witness will testify that, on another occasion, Vigil indicated that the witness should pay for the apartment of Vigil's daughter while she attended the University of New Mexico.  After this witness/auditor declined to pay for the apartment, he failed to receive the next three audits that state agencies requested him to perform.  Another auditor, Don Damon (now deceased), went from receiving $600,000.00 worth of contracts to not receiving any contracts after he refused to sell tickets to Vigil's birthday party fund raiser.  The United States represents that auditors/witnesses will testify that these witnesses subsequently adopted the term "Damonized" to signify what happened to auditors who refused to contribute to Vigil.

A former New Mexico Assistant Attorney General with personal knowledge will testify that the Attorney General's Office investigated Vigil's "pay to play" practices in 1991.  Allegedly, Vigil was defiant in the face of this investigation and informed the Attorney General's Office that he intended to help those people who assisted him.  In response, the Attorney General's Office filed a civil lawsuit and Vigil indicated he would refrain from soliciting donations from accountants who were seeking contracts from the State Auditor's Office ("SAO").

The United States also alleges that, to execute his "pay to play" scheme while State Auditor, Vigil often vetoed or changed a government agency's choice of independent auditors for no apparent legitimate reason.  According to the United States, this practice led to lawsuits against Vigil and to

a modification of the New Mexico Statutes.  The Compiler's notes to New Mexico Statutes Annotated §12-6-3 refer to three orders a New Mexico District Court entered in 1992 and 1993 in Vigil v. King, No. SF 92-1487(C) (First Jud. Dist. Ct. 1992).  The Compiler's notes summarize these court orders, which establish the formal procedure the State Auditor must employ before rejecting a state agency's chosen independent auditor.  See N.M. Stat. Ann. §12-6-3 Compiler's notes.

       2.      **State Auditor's Office Sponsored Training.**

The United States alleges that, after becoming State Auditor, Vigil instituted continuing education training seminars for accountants.  Records from the State Treasurer's Office ("STO") indicate the STO sponsored these training seminars and held them around the state several times a year.  Internal STO documents reveal that Vigil, as State Auditor, preferentially awarded state contracts to accountants who attended these seminars.  The United States contends that, in this way, Vigil pressured accountants to attend these seminars and pay the fees associated with them.

During the period when he was state auditor, Vigil's wife was president of Big Brothers/Big Sisters of Las Vegas, New Mexico ("Big Brothers/Big Sisters).  The United States alleges that Vigil dispersed the revenue collected at the education seminars to Big Brothers/Big Sisters.  In addition, the United States alleges that Vigil employed a person whose job included organizing training seminars, and therefore did not need assistance in performing such organization.  Nevertheless, Vigil entered into contracts to have Big Brothers/Big Sisters help organize these training seminars.

Pursuant to these contracts, Big Brothers/Big Sisters retained a significant portion of the revenue from these seminars.  The SAO, however, was responsible for funding one-half of its own budget and, therefore, according to the United States, revenue earned from training should have more appropriately gone to the SAO.  The United States contends that Vigil publicly acknowledged

involving Big Brothers in the seminar program, because of his wife's position in the organization.

In addition to helping fund the charitable organization his wife headed, Vigil directed revenue from the seminars to other charitable organizations. In connection with an October 27, 1997 seminar, for example, Vigil distributed $1,109.00 to the Hispano Business Student Association; Vigil's daughter was an officer in this organization at the time.

Finally, Vigil used revenue from these seminars to create a discretionary fund through which he directed contributions to other preferred organizations, including the Intellectual and Cultural Association, which was headed by contributors to his unsuccessful gubernatorial campaign. The United States represents that Vigil has publicly acknowledged to the media that he used these discretionary funds with the intent to generate positive public relations for the SAO and for himself.

## ANALYSIS

The United States Court of Appeals for the Tenth Circuit has explained that rule 404(b) is a rule "of inclusion, rather than exclusion, unless the evidence is introduced for [an] impermissible purpose or is unduly prejudicial." United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997). As a general rule, evidence of collateral conduct is admissible if its purpose is not to show criminal disposition, but rather to prove immediately or ultimately one or more elements of the charged crime. Rule 404(b) provides an illustrative list of permissible purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To determine whether rule 404(b) evidence is properly admissible, the Tenth Circuit looks to the four-part test that the Supreme Court of the United States set out in Huddleston v. United States, 485 U.S. 681 (1988):

Our case law instructs courts to consider four factors in weighing the admissibility of

> evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose,
> (2) its relevancy, (3) that the probative value of the evidence is not substantially
> outweighed by its prejudicial effect, and (4) a limiting instruction is given if the
> defendant so requests.

United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006)(citing Huddleston v. United States, 485 U.S. at 691).  Under rule 404(b), the threshold inquiry is "whether the evidence is offered for a purpose other than to prove criminal propensity."  United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001).

In its memorandum in support of its motion, the United States contends that evidence of Vigil's prior "pay to play" acts is offered to prove Vigil's "knowledge and intent, as well as absence of mistake, plan, pattern, preparation, and motive."  The Tenth Circuit has been critical of the attempt to introduce 404(b) evidence with a shotgun or "kitchen sink" approach that merely cites all permissible purposes enumerated in rule 404(b).  See United States v. Sullivan, 919 F.2d 1403, 1416 (10th Cir. 1990); United States v. Doran, 882 F.2d 1511, 1523 (10th Cir. 1989)("In demonstrating the relevance of proffered 'other acts' evidence, 'the government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.'").  The Tenth Circuit has required the United States to specifically articulate its purpose in introducing 404(b) evidence.

At the hearing on this motion, the United States began to focus on the issue of intent and emphasize that the evidence was significant proof of Vigil's intent to commit the charged crimes.  The Tenth Circuit has explained that intent is always a proper purpose.  See United States v. Suntar Roofing, Inc., 897 F.2d 469, 479-80 (10th Cir. 1990).  While proof of intent is a proper purpose for the admission of rule 404(b) evidence, and intent is an element of the crimes charged, the Court does

not believe that the element of Vigil's intent is materially at issue with respect to the crimes with which Vigil has been charged. Vigil does not argue that he did not intentionally receive money from Kent Nelson and others. There appears little dispute that he physically took possession of the money. The parties have only identified two thoughts that could have been in his mind when he took the money: (i) it was a bribe or kickback; or (ii) it was a campaign donation. This is not a case involving a myriad of factual possibilities. There is no argument that the money was a gift, a birthday present, or compensation for home repairs.

While trying to figure out precisely whether Vigil thought the cash was a kickback or a campaign donation might be important to permissible evidentiary purposes such as mistake or accident, the United States represents that, while it believes the payment was a kickback, it is not necessary to determine what Vigil thought the money was to find a violation of the Hobbs Act. Thus, the evidence does not materially help determine the intent issue or the kickback/donation issue. Moreover, as to the alleged donation scheme while he was State Auditor, the proposed evidence could just as easily support Vigil's argument that he thought it was a campaign contribution as it does the United States' argument that the transfers were bribes.

While some of the other examples of proper purposes in rule 404(b), i.e. plan, knowledge, opportunity, preparation, or absence of mistake, could be applicable, the United States has not argued with precision and specificity how any of these other purposes actually are applicable. The United States' approach is ineffective in alerting the Court, the defense, and ultimately the jury, to precisely why this specific evidence is being offered.

What the Court believe the United States is attempting to introduce the evidence to show is that, because Vigil used his official position in the past to seek donations, payments, and contributions

for an improper purpose, he is doing the same here.  He used, in other words, the same plan or scheme.  The problem with this purpose is that the jury would have to first determine whether he used his official position in the State Auditor years for an improper purpose before this evidence would be useful in this case.  In the end, evidence, even if it is of a similar scheme, that Vigil "wrongfully obtained [or] attempted to obtain property from another with that person's consent" in 1995 does not materially help the jury determine whether Vigil "wrongfully obtained [or] attempted to obtain property" from someone in 2002.  See Tenth Circuit Criminal Pattern Jury Instruction 2.71, at 232 (internal brackets omitted).  It is not the same plan or scheme, it is just the same crime.  Rather than intent or accident, it is the "wrongful obtaining" that is the real issue in the trial.

If a defendant were on trial for burglary, intent certainly would be an element, but it is not really at issue.  The issue is whether the defendant committed the burglary; if he did, intent can usually be readily inferred.  Intent is somewhat of a phantom issue, and rule 404(b) evidence of prior burglaries would not be appropriate.

On the other hand, if a defendant were on trial for drug possession and denied that he knew drugs were in his car, it would be proper to introduce evidence that once before he had been arrested with drugs in his possession and had claimed mistake.  See United States v. Mares, 441 F.3d at 1158-59.  Mistake and/or accident are true issues in that case.

Here, the case is closer to the burglary example.  The issue is why did Vigil take the money and whether he unlawfully did so.  What this evidence shows is that, like the burglar, he did it once and therefore must be doing it again.  It is "[e]vidence of other . . . acts . . . to prove the character of a person in order to show action in conformity therewith," and is therefore inadmissible.  Fed. R. Evid. 404(b).  In the end, the evidence demonstrates propensity, and is not very helpful for any other

purpose.

The four factors in <u>Huddleston v. United States</u> are not quite as distinct as they first appear and often overlap.  To a significant extent, the United States' failure to articulate specifically and precisely a proper purpose for admission undermines the proffered evidence's relevance to a determinative matter in the case.  Even if a proper purpose were articulated, the Court does not believe that the evidence at issue is relevant to the crimes charged, other than as character evidence or as proof of Vigil's propensity to engage in "pay to play" activities.  For example, the alleged seminar scheme is similar to the actions charged here only in a broad sense of "pay to play."  Nor are they immediately close in time.  In the end, they are merely relevant to portray Vigil in a bad light rather than for a proper purpose.  The United States has not demonstrated to the Court how the evidence it proffers under rule 404(b) tends to make any ultimate or consequential fact more or less likely.  <u>See</u> Fed. R. Evid. 401.

The weakness of the United States' position on the first two <u>Huddleston v. United States</u> factors has an impact on the third factor.  Even if there is a proper purpose and even if it is relevant under the liberal standards of rules 401 and 404(b), the Court does not believe that the probative value of the United States' 404(b) evidence substantially outweighs the risk of unfair prejudice to Vigil should the Court admit the evidence.  Although all prosecutory evidence is naturally prejudicial to a defendant in a criminal case, the United States' evidence at issue is especially so, because it implicates the rule against propensity evidence without being particularly relevant to a dispositive fact ultimately at issue in the case.  The probative value is further diluted by its cumulative nature.  There is sufficient evidence in this case, other than that the United States wishes to admit pursuant to rule 404(b), on which the United States can sustain its case.  The United States represents that evidence

of Vigil's conduct while State Auditor will be relatively brief and succinct.  The United States anticipates calling a small number of witnesses who will testify as to their personal knowledge of "pay to play" activity in which Vigil engaged while State Auditor.  The United States will also introduce a small number of exhibits that corroborate the testimony of these witnesses.  Accordingly, the Court believes the United States' diminutive characterization of its own evidence is further proof of the evidence's limited probative value for a proper purpose.

In fact, however, the Court is concerned that evidence related to the State Auditor years will not be so limited and will become a trial within a trial.  To really be useful, the United States must prove that he "wrongfully obtained" contributions and donations in the 1990's.  The Court will essentially be hearing evidence of uncharged conduct.  The jury already has its hands full deciding whether the alleged Montoya/Vigil scheme involved wrongful taking without adding more complicated fact patterns from so long ago.

While the Tenth Circuit has explained that exclusion under rule 403 is a drastic remedy and that its use to preclude relevant evidence should be limited, this nonetheless appears to be the case to apply it.  The parties estimate the trial will last five weeks.  Trials in our adversarial system have a tendency to expand rather than contract.  It is important to focus on the crimes charged and try them as clearly and effectively as possible without prejudice to either party.

The Court does not believe that the United States has articulated a proper purpose pursuant to which such evidence might be admitted under rule 404(b).  Even if a proper purpose were found, however, the Court does not believe the evidence is sufficiently probative to overcome its substantial prejudicial impact.  Evidence of Vigil's "pay to play" activity during the time he served as New Mexico State Auditor will not be admitted.

Finally, the Court does not doubt that the evidence might be helpful to the jury.  As people go through life, they make a vast array of important decisions based on other people's character and propensity.  It would be difficult to ignore such indications of future conduct in every day life and often times foolhardy to do so.  But the genius of our criminal justice system is that we only try a defendant for the crime with which he or she is charged, not for other wrongs.  In the end, the evidence here would do little more than show Vigil's character and propensity; that the law does not allow.

**IT IS ORDERED** that the United States' Motion in Limine Regarding Admissibility of Federal Rule of Evidence 404(B) Material is denied, and Defendant Robert Vigil's Motion in Limine to Exclude Evidence of Uncharged Acts Related to Decade Old Events When Mr. Vigil was State Auditor and Response to Government's Motion Regarding Admissibility of Federal Rule of Evidence 404(B) Material is granted.

UNITED STATES DISTRICT JUDGE

Counsel:

David C. Iglesias
   United States Attorney
Jonathon Gerson
Steven C. Yarbrough
   Assistant United States Attorneys
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles and Crow
Albuquerque, New Mexico

– and –

Sam Bregman
Eric Loman
Bregman Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*