# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                          No. CR 05-2051 JB

ROBERT VIGIL,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Robert Vigil's Motion to Exclude All Evidence and Testimony Regarding Kent Nelson as Violating Defendant's Sixth Amendment Rights, filed September 11, 2006 (Doc. 357)(the "Motion"). The Court held a hearing on this motion on September 11, 2006. The primary issue is whether the Court should exclude Kent Nelson's prior trial testimony because Defendant Robert Vigil will not have an opportunity to cross-examine Nelson about events that have occurred since the first trial. For reasons stated at the hearing, for reasons consistent with those stated at the hearing, and because the Court concludes that Vigil had a substantially full and fair opportunity to cross examine Nelson in the first trial, the Court will permit Nelson to testify through his testimony from the first trial and will deny Vigil's motion.

## PROCEDURAL BACKGROUND

Nelson testified at Vigil's first trial. Vigil represents that, during Nelson's testimony at that trial, Nelson cried at times and was very emotional.

Subsequent to the first trial, New Mexico Attorney General Patricia Madrid indicted Nelson on state law charges purportedly based on his testimony in the first trial. Based upon that indictment,

Nelson through counsel has indicated that he will invoke his Fifth Amendment right against self-incrimination and will not respond to substantive questioning.  In response, the United States Attorney's officer recently sought to have the Court modify Nelson's conditions of release, making them more restrictive than before he invoked his Fifth Amendment rights.

Vigil moves the Court to exclude all evidence and testimony regarding Nelson.  Vigil contends that, based upon these recent events, he will be deprived of his right to confront Nelson.

### LAW REGARDING ADMISSIBILITY OF PRIOR TESTIMONY

The United States Court of Appeals for the Tenth Circuit has had several occasions to deal with situations similar to that before the Court on this motion.  See United States v. Allen, 409 F.2d 611 (10th Cir. 1969);  Mason v. United States, 408 F.2d 903 (10th Cir. 1969).  In United States v. Allen, the Tenth Circuit reviewed a district court's admission of transcripts of two witness' testimony taken at a preliminary hearing, when those same witnesses invoked their Fifth Amendment rights and refused to testify at the defendant's trial.  The Tenth Circuit approved the use of transcripts at trial noting that, despite the differences inherent between a preliminary hearing and a trial, "the statements of the witnesses [at the preliminary hearing] were made 'at a fullfledged hearing' with accused present and represented by counsel who was given 'a complete and adequate opportunity to cross-examine.'" United States v. Allen, 409 F.2d at 613 (quoting Pointer v. Texas, 380 U.S. 400, 407 (1965)).

The Tenth Circuit in United States v. Allen also addressed the concern "that the use of [] transcripts does not disclose the demeanor of the witnesses and thus deprives the trier of the fact of an important indication of credibility."  United States v. Allen, 409 F.2d at 613.  In holding that the admission of transcripts was permitted despite this concern, the Tenth Circuit cited Mattox v. United States, 156 U.S. 237 (1895), a case in which the Supreme Court of the United States approved the

-2-

use of transcripts of testimony taken at a former trial, given by a witness who had died before the

retrial.  The Supreme Court in Mattox v. United States acknowledged the value of confrontation as

a safeguard of liberty, but determined that procedural necessity and public policy permitted the use

of the transcripts.

> [I]f notes of [the witness'] testimony are permitted to be read, [the defendant] is
> deprived of the advantage of that personal presence of the witness before the jury
> which the law has designed for his protection. But general rules of law of this kind,
> however beneficent in their operation and valuable to the accused, must occasionally
> give way to considerations of public policy and the necessities of the case. To say that
> a criminal, after having once been convicted by the testimony of a certain witness,
> should go scot free simply because death has closed the mouth of that witness, would
> be carrying his constitutional protection to an unwarrantable extent. The law in its
> wisdom declares that the rights of the public shall not be wholly sacrificed in order
> that an incidental benefit may be preserved to the accused.

Id. at 243. Because the defendant had confronted the witnesses in the preliminary hearing, the

witnesses were under oath at that time, and the defendant was afforded a complete and adequate

opportunity for cross-examination, the Tenth Circuit in United States v. Allen ruled that the

transcripts of the witnesses' testimony had been properly received at trial.  See United States v. Allen,

409 F.2d at 614.

The Tenth Circuit reached a similar result in Mason v. United States, a case in which the

defendants were facing a retrial after an initial conviction had been appealed and reversed.  During

the course of the second trial, the prosecution called four witnesses who had testified as witnesses

for the United States at the first trial.  When called to testify in the second trial, each refused to do

so on Fifth Amendment grounds.  The United States then offered the testimony of two witnesses from

the transcript of the former trial of the defendants on the same charges.  The defendants objected, but

the trial court allowed the transcript of the two witnesses' testimony to be read to the jury.

On appeal, the defendants contended that they had been denied their Sixth Amendment right of confrontation.  In rebuffing the defendants' argument, the Tenth Circuit quoted Justice Marshall's opinion in Barber v. Page, 390 U.S. 719 (1968):

> It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant.  This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement.

Mason v. United States, 408 F.2d at 905-906 (quoting Barber v. Page, 390 U.S. at 722).  The Tenth Circuit stated that, based on the record before it, the trial judge did all that was reasonable and proper to have the witnesses testify.  See id. at 906.  The Tenth Circuit held that the trial judge was not in error in permitting the use of the witnesses' testimony at the prior trial under the circumstances and in the manner he did.[1]  See id.

More recently, in United States v. Gutierrez, No. 95-6013, 1996 U.S. App. LEXIS 15622 (10th Cir. June 28, 1996),[2] the defendant asserted that the trial court violated his Sixth Amendment

---

[1]In conjunction with admitting the testimony of the unavailable witnesses, the trial judge gave the following instruction:

> The testimony of at least two witnesses will be brought to your attention, ladies and gentlemen, by reading of a transcript.  This is testimony that has been given under oath with respect to which there has been cross-examination.  So you must canvass and evaluate it just as if the witnesses were on the stand.

Mason v. United States, 408 F.2d at 906.

[2]The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria, and the rules therefore allow citation to this unpublished decision.

right to confront witnesses when the court allowed a government witness to assert his Fifth Amendment right against self-incrimination in the middle of defense counsel's cross-examination. Although the Tenth Circuit acknowledged that, "[i]n some cases[,] the Sixth Amendment does require that the testimony of a witness who asserts the Fifth Amendment be stricken in order to preserve a defendant's right to cross-examine and confront witnesses," it cautioned that "[t]his rule does not apply . . . where the defendant is merely 'precluded from inquiring into collateral matters bearing only on the credibility of the witness." Id. at *12 (quoting United States v. Nunez, 668 F.2d 1116 (10th Cir. 1981)).

Case law from other Circuits suggest a similar analysis. In United States v. Gary, 74 F.3d 304 (1st Cir. 1996), Raymond Gary and Eric Hopkins were initially both charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). See id. at 307. Hopkins pled guilty to the charges. See id. In a separate trial of Gary, Hopkins testified on Gary's behalf, and the United States cross-examined Hopkins at that time. See id. at 307-08. The proceedings ended in a mistrial. See id. at 308.

Gary's case was transferred to a new judge before whom a retrial commenced. See id. When Gary attempted to call Hopkins to the stand in the second trial, however, the United States objected on the grounds that Hopkins would invoke his Fifth Amendment right against self-incrimination during cross-examination. See id. Hopkins was then facing pending state breaking and entering charges, and a parole revocation proceeding, and had not yet been sentenced on the federal charges to which he pled guilty. See id.

After excusing Hopkins from testifying, the trial court permitted Gary to introduce Hopkins' prior recorded testimony from the first trial by having it read to the jury. See id. Gary was convicted

-5-

and argued on appeal that his Sixth Amendment right to compulsory process was violated.  Despite

recognizing the drawbacks to the introduction of transcript testimony, the United States Court of

Appeals for the First Circuit disagreed:

> We noted [at oral argument on this case], and reiterate today, that whenever
> transcript testimony is admitted in a trial, the fact-finder is deprived of a full-fledged
> opportunity to assess directly the credibility and demeanor of the declarant.  The rules
> of evidence, however, permit such evidence to be admitted at trial.

United States v. Gary, 74 F.3d at 311.

The Supreme Court of the United States decided Crawford v. Washington, 541 U.S. 36

(2004), on March 8, 2004.  In Crawford v. Washington, the Supreme Court held that, consistent with

the Sixth Amendment, "[t]estimonial statements of witnesses absent from trial [are admissible] only

where the declarant is unavailable, and only where the defendant has had a prior opportunity to

cross-examine."  Id. at 59.  While the Court has not found, and the parties have not cited, Tenth

Circuit cases discussing the admission of transcript testimony since the Supreme Court's ruling in

Crawford v. Washington, caselaw from other circuits suggests that the analysis is not different than

before Crawford v. Washington.

In United States v. Garcia, 117 Fed. Appx. 162 (2d Cir. 2004), the United States Court of

Appeals for the Second Circuit affirmed a district court's admission at retrial– with some redactions–

of prior testimony of the principal government witness, who disappeared after testifying in Defendant

Garcia's first trial.  Citing Crawford v. Washington, the Second Circuit held that "[t]estimonial

evidence offered against the defendant by a witness not present at trial can only be admitted if the

witness is unavailable and the defendant has had a prior opportunity to cross-examine the defendant."

United States v. Garcia, 117 Fed. Appx. at 163.  The Second Circuit relied on Crawford v.

Washington for this rule, "because, for testimonial statements, 'the only indicium of reliability sufficient to satisfy constitutional demands is . . . confrontation.'" Id. (quoting Crawford v. Washington, 541 U.S. at 68-69).

The Second Circuit, in United States v. Garcia, articulated the standard relevant to determining whether prior cross-examination was adequate to satisfy the Confrontation Clause:

> Thus, in determining whether the former testimony of an unavailable witness, whom defendant has had a prior opportunity to cross-examine at an earlier trial, can be admitted at a subsequent trial without violating the Confrontation Clause, this Court has "looked to the actual transcript of [the witness's] testimony - in particular to [defense counsel's] cross-examination of [the witness] - to determine whether the cross-examination imbued the testimony with the requisite 'indicia of reliability,'" through "a serious effort by [defense counsel] to undermine and discredit [the witness's] testimony," including by "questioning [the witness] about certain inconsistencies" in his testimony and "eliciting testimony on [the witness's] own criminal record." Similarly, in resolving the issue of admissibility under Federal Rule of Evidence 804(b)(1), we have observed that the opportunity for cross-examination "'is generally satisfied when the defense is given a full and fair opportunity to probe and expose [the] infirmities [of testimony] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.'"

United States v. Garcia, 117 Fed. Appx. at 164 (internal citations omitted). In addition, the adequacy of cross-examination is particularly strong when "both proceedings are trials and the same matter is seriously disputed at both trials, . . . [such] that the side opposing the version of a witness at the first trial had a motive to develop that witness' testimony similar to the motive at the second trial." Id.

In Sena v. Spencer, No. 05-10381-DPW, 2006 U.S. Dist. LEXIS 9216 (D. Mass. March 8, 2006), the United States District Court for the District of Massachusetts addressed the admissibility of transcript testimony in the context of a habeas corpus proceeding. In the defendant's second state trial after an initial conviction was reversed and remanded, the trial judge allowed the prosecution to

admit the prior recorded testimony of a witness who testified at the first trial.  The defendant argued that the cross-examination of this witness at the first trial was inadequate to address alleged new issues that emerged in the second trial as a result of testimony by a witness who had not testified in the first trial.  The federal district court recognized that everything was not identical in the second trial, but indicated that "the Petitioner had the motive and opportunity to question [the witness] at the first trial about everything that he saw and that [the new witness'] later testimony did not change the evidence sufficiently to undermine that motive and opportunity."  Id. at *33.  The court in Sena v. Spencer held that correlation between the evidence in the first and second trials need not be perfect to satisfy the Confrontation Clause.  Id. at *35 n. 19 ("That the earlier cross-examination did not cover every detail and every possible avenue of impeachment that counsel would now like to pursue does not change the fact that the defendant had the requisite opportunity for cross-examination.").

<u>ANALYSIS</u>

The statements by Nelson at issue here are testimonial.  The issue is whether the prior trial's cross-examination was adequate for purposes of the Confrontation Clause.  After carefully reviewing the vigorous cross-examination of Nelson conducted at the first trial, which was effective and included questions regarding his motive for testifying as he did, the Court concludes that this prior cross-examination will sufficiently allow the jury at the second trial to evaluate the truth of Nelson's testimony.  Vigil had a similar motive in both trials.  Consequently, the Court does not believe that admission of Nelson's prior testimony at Vigil's second trial will violate his right to confrontation under the Sixth Amendment or will be contrary to rule 804(b)(1).

**1. Vigil Had an Opportunity to Cross Examine Nelson in the First Trial.**

Vigil's first trial concerned the same incidents and charges as the second trial.  The evidence

in the second trial is neither new or materially different.  Vigil's motive to cross-examine Nelson is not materially different now than at the first trial.

Vigil raises three primary concerns about introducing the prior testimony, but those concerns remain speculative about new avenues of examination.  Most important, Vigil's concerns do not rise to constitutional dimensions.

Vigil is most concerned about his inability to question Nelson about any bias that might be reflected in his testimony as a result of the state charges currently pending against Nelson.  While Nelson's state charges might be an appropriate area of cross-examination if Nelson were to testify in this case, it is difficult for the Court to see how the new state charges would make him biased, or significantly alter his testimonial position from the first trial.  Vigil argues that "Nelson's decision to cooperate with prosecuting authorities and whether or not he would attempt to curry favor with them" is relevant to the jury's appreciation of his testimony, and that Vigil did not have a full opportunity to cross-examine Nelson about that bias with respect to state charges.  Motion at 5. Vigil contends that the jury in this trial is entitled to evaluate whether a witness who is cooperating would shade his testimony in favor of a prosecuting entity.  Vigil's representation of the relationship between Nelson and state prosecutors is, however, inaccurate.

Nelson is not cooperating with the state prosecuting authorities and does not appear to be currying favor with them.  In fact, his relationships with both state and federal authorities appear to be quite adversarial at this point.  Indeed, Vigil represents that the state charges have caused Nelson to cease cooperating with the federal authorities and that the United States Attorney's Office is currently attempting to revoke his conditions of release.  Nelson had already pled guilty to federal charges at the time of his testimony in the first trial.  Any conclusion as to how Nelson might shade

his testimony now, to the extent that the state charges would cause him to take a different position from the first trial, or to have a vastly different motivation, is speculation.

Moreover, Nelson's testimony from the first trial is frozen, and any bias that Vigil alleges presumably did not exist at the time of the first trial, when Nelson allegedly had no reason to know of or expect state prosecution.  Hence, the prior testimony was not tainted with this alleged bias.  In addition, although the state case did not exist at the time of the first trial, Vigil had the opportunity and the motive to ask Nelson about all the possible crimes he had committed and for which he could be prosecuted.

Nor is the effectiveness of cross-examination strategy at issue.  Vigil had the opportunity to cross-examine Nelson at the first trial, and he availed himself of that opportunity.  Additional cross-examination would serve only to impeach Nelson, and Vigil has already raised similar questions about his credibility.  Vigil had a full opportunity and motive to examine Nelson vigorously about his federal charges; the presence of the new state charges would not present new substantive issues unrelated to credibility.  Accordingly, Vigil's inability to attack this new subject area does not rise to constitutional dimensions.

It may be true that the attempt of the United States Attorney's Office to revoke Nelson's conditions of release would be an appropriate area of cross-examination relating to bias if Nelson were to testify in the second trial.  Irrespective whether this might make Nelson more or less cooperative, Vigil had the opportunity to cross-examine Nelson regarding his conditions of release and the fact that the United States might revoke them and retreat from other promises if Nelson did not cooperate by testifying.  Vigil exposed the fact at the first trial that Nelson desired to cooperate fully with the United States so that they would not attempt to fully restrict his freedom.

-10-

If the Court were to uphold Vigil's two objections, it is hard to imagine when the testimony from a prior trial could be introduced. There will almost always be something new in the second trial; that a witness who had testified in an earlier proceeding is not testifying at a subsequent proceeding will always add some wrinkle that provides creative counsel, such as Vigil has, with new areas of possible cross-examination. The Court is not prepared to say that circumstances could not change so much that it would never be improper to admit prior testimony; the Court need only say that this case does not present a shift in circumstances so great that offering the prior transcript will violate the Confrontation Clause.

2.      **The Law Prefers, But Does Not Mandate, Live Testimony.**

Vigil also contends that his case is different from other cases because Nelson's demeanor at the first trial was of great importance. Vigil argues that the prior jury was thereby able to get the full picture of Nelson's feelings and words regarding Vigil, the FBI's tactics, and the video evidence.

There is no question that it is in the best interest of fairness for the jury to be able to observe the demeanor of every witness in a trial. Nevertheless, both the Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have stated that the right to live confrontation "must occasionally give way to considerations of public policy and the necessities of the case." Mattox v. United States, 156 U.S. at 243. See United States v. Allen, 409 F.2d at 613-14. Vigil and Nelson were brought face to face in the first trial, Nelson testified under oath, and Vigil's opportunity to cross-examine Nelson was full and adequate. Assessing the totality of the circumstances, it is proper for the Court to admit the transcripts.

There is no doubt that the law prefers live testimony. Something is always lost when the witness is not in the courtroom. Nevertheless, correlation between the evidence in the first and

second trials need not be perfect to satisfy the Confrontation Clause.  If the Court were to find the issues in this case distinguish it from other rule 804(b)(1) cases, it would effectively be writing rule 804(b)(1) out of the Federal Rules of Evidence.  Such a result is not appropriate in this case; this case seems to be one where rule 804(b)(1) most carefully preserves Vigil's right to confrontation.

**IT IS ORDERED** that the Motion to Exclude All Evidence and Testimony Regarding Kent Nelson as Violating Defendant's Sixth Amendment Rights is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David Iglesias
   United States Attorney
Jonathon Gerson
Steven Yarbrough
   Assistant United States Attorneys
Albuquerque, New Mexico

          *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

– and –

Sam Bregman

Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

     *Attorneys for the Defendant*