**FILED**

IN THE UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

JAN 0 9 2007

UNITED STATES OF AMERICA,

      Plaintiff,

MATTHEW J. DYKMAN
CLERK

vs.

No. CR 05-2051 JB

ROBERT VIGIL,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Letter from Eric Loman to the Court (dated December 20, 2006), filed January 3, 2007 (Doc. 431)( "Request Letter"). The Court's courtroom deputy contacted both counsel, and no party wanted a hearing or more briefing. The primary issues are: (i) whether the Court should afford a few of Vigil's family members and friends an opportunity to speak briefly on his behalf at his sentencing; and (ii) whether the Court should allow some of the jurors from the trial to address the Court regarding their views of the case as it relates to Vigil's sentencing. Because the family members and friends may provide information relevant to the Court on Vigil's sentencing, the Court will allow a few family members and friends to speak briefly; but, because the Court does not believe that the jurors would provide the Court with appropriate or relevant information, the Court will not permit the jurors to address the Court at sentencing.

## PROCEDURAL BACKGROUND

On July 25, 2006, a grand jury returned a Fifth Superceding Indictment charging Vigil with twenty-four counts of racketeering and extortion in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), and the Hobbs Act, 18 U.S.C. §§ 1951 &

1952.  See Fifth Superceding Indictment, filed July 25, 2006 (Doc. 259).  The Court held a jury trial

in this case from September 5, 2006 to September 30, 2006.  The jury returned a verdict on

September 30, 2006, finding Vigil not guilty on Counts One through Twenty-Three and guilty on

Count Twenty-Four of the Fifth Superceding Indictment.  See Verdict, filed September 30, 2006

(Doc. 408).

The Court has re-set Vigil's sentencing hearing for January 24, 2007.  As Vigil prepares for

that hearing, he has raised a few questions about its format.  Specifically, Vigil would like to know

whether the Court will afford Vigil's family and friends an opportunity to speak briefly on his behalf.

See Request Letter.  Vigil states that, if it is acceptable to the Court, he would like to have a few

friends and family members address the Court.  See id.

Vigil also represents that some of the jurors from the trial have contacted him and that these

jurors would also like to address the Court regarding their views of the case as it relates to Vigil's

sentencing.  See id.  Vigil asks the Court for its guidance.

On January 4, 2007, the United States responded to Vigil's Request Letter.  See Letter from

Jonathon M. Gerson to the Court (dated January 4, 2007), filed January 8, 2007 (Doc. 432)("United

States' Response").  The United States contends that whether members of Vigil's family and other

friends are permitted to address the Court is a matter within the Court's discretion, and "that the

Court retains the authority to limit the number and duration of their presentations."  Id. at 1.  The

United States argues, however, that "[t]he trial jurors have no material information about this case

that the Court does not already possess" and that it would be inappropriate to allow the jurors to

participate at the sentencing hearing.  Id. at 2.

-2-

## RULE 32(i)(4)

Rule 32(i)(4) of the Federal Rules of Criminal Procedure governs the opportunity to speak at a sentencing hearing. The rule expressly provides defense counsel, the defendant, the attorney for the United States, and, in cases involving violence or sexual abuse, the victim an opportunity to speak. See Fed. R. Crim. P. 32(i)(4)(A)-(B). Although the rule does not expressly authorize presentations by other parties, rule 32(i)(4)(A)(ii) requires the Court personally address the defendant so that the defendant has the opportunity "to speak or to present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii).

## ANALYSIS

In contrast to what the jurors heard and saw at the trial, when the Court imposes sentence on Vigil, there are no limitations on the information concerning his background, character, and conduct that the Court may receive and consider for the purpose of imposing an appropriate sentence. Because Vigil's family members and friends may provide information about his background, character, and conduct, the Court will permit a few of them to speak briefly at his sentencing. The Court concludes, however, that because the jurors have no such personal knowledge about Vigil, or personal knowledge about the allegations in this case, allowing the jurors to address the Court would violate the public policy preference for finality in litigation and undermine the sanctity of jury deliberations necessary for just verdicts. Because the Court does not believe it should hear anything the jurors might offer about sentencing, the Court will not allow the jurors to address the Court at the sentencing.

I.     **THE COURT WILL ALLOW A FEW FAMILY MEMBERS AND FRIENDS TO SPEAK BRIEFLY AT THE SENTENCING.**

The United States Court of Appeals for the Tenth Circuit has consistently acknowledged that, under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See United States v. Soehnge, No. 06-1212, 2007 U.S. App. LEXIS 81, at *6 (10th Cir. Jan. 2, 2007); United States v. Jardine, 184 Fed. Appx. 728, 730 (10th Cir. 2006)(noting that 18 U.S.C. § 3661 remains valid after the Supreme Court of the United States' decision in United States v. Booker, 543 U.S. 220 (2005)); United States v. Doe, 398 F.3d 1254, 1259 (10th Cir. 2005). The Supreme Court has stated that 18 U.S.C. § 3661 "codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information." United States v. Watts, 519 U.S. 148, 151 (1997). The Supreme Court in United States v. Watts reasoned that it is important to differentiate between the standards applicable to determining the admissibility of evidence at trial and those applicable to determining what evidence is relevant to making informed sentencing decisions. See id. at 151. The Supreme Court concluded: "Highly relevant -- if not essential -- to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Id. at 151-52 (citing Williams v. New York, 337 U.S. 241, 247 (1949)).

The Court believes that Vigil's family members and friends may provide information relevant to the Court's consideration of the sentencing factors set out in 18 U.S.C. § 3553(a), especially information regarding Vigil's personal history and characteristics. See 18 U.S.C. § 3553(a)(1). The

-4-

United States asserts, however, that this information is traditionally brought before the Court through defense counsel -- typically in the form of letters or other written testimonials -- and that the Federal Rules of Criminal Procedure do not expressly authorize family members and friends to make oral presentations in mitigation of punishment.  <u>See</u> United States' Response at 1.

Nevertheless, because the Federal Rules of Criminal Procedure do not expressly prohibit family members and friends from speaking at a defendant's sentencing hearing, the United States acknowledges that "the presentation of a limited number of friends and family members might be considered to fall within the defendant's right 'to present any information to mitigate the sentence.'" <u>Id.</u> (quoting Fed. R. Crim. P. 32(i)(4)(A)(ii)).  Accordingly, the United States believes that this issue is a matter within the Court's discretion.  <u>See</u> United States' Response at 1.  The United States maintains, however, that, "[e]ven if the Court agrees to permit friends and family members to speak at the sentencing hearing, . . . the Court retains the authority to limit the number and duration of their presentations."  <u>Id.</u>

The Court will allow a limited number of Vigil's family members and friends to address the Court at Vigil's sentencing.  The Court agrees with the United States that these presentations are arguably within the scope of presentations that rule 32(i)(4)(A)(ii) allows. Vigil's family and friends may provide information concerning his background, character, and conduct that the Court should receive and consider for the purpose of imposing an appropriate sentence under 18 U.S.C. § 3553(a). The Court also notes that Vigil's request to have family members address the Court is not completely atypical; the Court, from time to time, allows family members and friends to make statements at a sentencing hearing when it feels those statements will inform its consideration of sentencing factors and help it arrive at a just and appropriate sentence.

The Court will rely on the professionalism and sound judgment of Vigil's counsel to help present this evidence as efficiently and effectively as possible.  Vigil may be able to present much of this evidence in writing before sentencing, but the Court will not, pre-hearing, dictate how Vigil presents the evidence.  Similarly, while the Court will not set, at this time, any definite limit on the number of speakers Vigil may present or impose specific time limits on the speakers' presentations, the Court has in mind that no more than about three live speakers would be appropriate.  In any case, the Court will permit a limited number of family members and friends to make presentations, but the Court will, if necessary, exercise its discretion to limit the number and duration of those presentations.

## II.   **THE COURT WILL NOT ALLOW THE JURORS TO ADDRESS THE COURT.**

While Vigil's friends and family may be able to offer personal information about his background, character, and conduct, the jurors cannot.  Moreover, jurors in our criminal justice system are obligated to reach a verdict without regard to sentencing implications.  Because the Court does not believe that the jurors should be providing, in open court, information about the jury's deliberations, and the Court cannot envision any relevant information that the jurors could provide at the sentencing, the Court will not allow jurors to address the Court at the sentencing.

### A.   **THE JURORS DO NOT HAVE ANY PERSONAL KNOWLEDGE ABOUT VIGIL OR THE FACTS IN THIS CASE.**

The Court went to considerable efforts before trial -- including summoning over 1,200 jurors from a venire comprised of citizens from all three of the District's Petit Jury Divisions, employing extensive juror questionnaires, and allowing for lengthy voir dire -- to identify jurors who did not know much, if anything, about Vigil and/or the allegations in this trial.  Most of the jurors selected

came from the southern part of the state.  Assuming that the jurors seated were truthful, and the Court has no reason to believe that the jurors were not completely frank, the jurors knew nothing about Vigil or the allegations against him before voir dire and the trial.  See United States v. Greer, 620 F.2d 1383, 1390 (10th Cir. 1980)(Barrett, J., dissenting)("It is presumed that jurors will conscientiously observe the instructions and admonitions of the court.").

The jurors' view of the case was limited to the evidence presented at trial, which was, in turn, limited by the Federal Rules of Evidence and the Court's various evidentiary rulings.   Until they delivered their verdict and the Court discharged them from their duties, everything that they knew about Vigil and about the allegations against him was learned in open court.  Consequently, because of the limits on the jurors before and during the trial, and because the jurors have no personal knowledge about Vigil or the allegations, it is not likely that they will be able to tell the Court anything that it does not already know about Vigil and the allegations against him.  The sentencing judge sat through the same trial, and heard and observed with the jurors all the evidence the parties presented.  In addition, because of the extremely large number of pretrial motions, motions in limine, and evidentiary questions upon which the Court was required to rule before and throughout the month-long trial, the Court learned a great deal more about Vigil and was familiar with a wealth of evidence to which the jury was not privy.

It is a fundamental precept of our criminal justice system that the jury's deliberative process should be free from extraneous influences.  See United States v. Greer, 620 F.2d at 1388 (Barrett, J., dissenting)("It is generally accepted, of course, that injection of outside influences into a jury's deliberative process is contrary to the foundations upon which our system of justice rests.").  Accordingly, during the trial, the Court went to great efforts to shield the jurors from any outside

-7-

influences that might impact their deliberations.

Throughout the trial, the Court repeatedly gave the traditional instructions prohibiting jurors from talking to anyone -- including their fellow jurors -- about the case, but also imposed greater restrictions on the jurors than normal. Not only did the Court instruct the jurors not to read , watch, or listen to any news reports of the trial, the Court also precluded entirely the jurors from listening to the radio, reading the local newspapers, or watching television.[1]  When the jury began deliberations, and media coverage became most intense, the Court sequestered the jury for one night. See Amended Order Sequestering Jury, filed September 29, 2006 (Doc. 402).  Given these precautions, the Court has no reason to believe that the jurors did not do as instructed and that they were not successfully shielded from any outside influence.

------------------------------

[1]An example of the instruction the Court routinely gave at trial is as follows:

[L]adies and gentlemen, . . . I want to remind you of a few things that are especially important.  Until the trial is completed . . . you are not to discuss this case with anyone, whether it's members of your family, people involved in the trial, or anyone else, and that includes your fellow jurors. There will come a time when we'll tell you when to deliberate and when to discuss the case, but it's not at this point so please observe these rules.  If anyone approaches you and tries to discuss the trial with you please let me know about it immediately.

Also, you must not read or listen to any news reports of the trial.  Again, don't listen to the radio, don't watch television, don't read the newspapers.  You are permitted to read the New York Times . . . and USA Today as long as you don't read the state by state section.  Don't get your news from the Internet.  Again, stay off the Internet and don't do research for the purposes of this case.

And finally remember that you must not talk about anything with any person who's involved in the trial, even if it doesn't have anything to do with the trial.  [Finally,] you're not to talk at all with anyone who has an interest in this case.

Transcript of Trial at 130:1-23 (Court)(September 28, 2006).  The Court's citation to this trial transcript refers to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Accordingly, unlike friends and family, the jurors have no personal knowledge about Vigil and about the allegations in this case. They thus cannot provide the Court with new information about Vigil that the Court does not already have. In this way, they are no different than many other citizens who may have an interest in this case.

The Court will base its sentencing decision upon a broader range of information than that available to the trial jurors. The trial jurors have no material information about this case that the Court does not already, or will at sentencing, possess.

**B.      THE JURY IN OUR SYSTEM SHOULD NOT BE CONCERNED WITH SENTENCING.**

The Tenth Circuit has acknowledged that "[t]he authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial" and that breach of that standard is often reversible error. United States v. Greer, 620 F.2d at 1384. See Rogers v. United States, 422 U.S. 35, 40 (1975)(holding that a trial court's response to a jury's question whether they might return a verdict with a recommendation for mercy should have included "the admonition that the jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); Chapman v. United States, 443 F.2d 917, 920 (10th Cir. 1971)(noting that, absent a statutory requirement that the jury participate in the sentencing decision, nothing is left "for jury determination beyond the guilt or innocence of an accused."). This rule is premised on the theory that, "if the jury is convinced a defendant will receive a light sentence, such amounts to an invitation to convict on weaker evidence." United States v. Greer, 620 F.2d at 1390 (Barrett, J., dissenting). In a concurring opinion in United States v. Greer, the Honorable William E. Doyle, United States Circuit Judge, summarized:

-9-

The communication to the jury of the subject of punishment is oftentimes reversible even when the judge communicates it.  It is so fundamental that a stock instruction must be given to the jury.  This provides that the consideration of punishment is a matter exclusively within the province of the court and is never to be weighed by the jury in any way in arriving at its verdict as to the guilt or innocence of the accused.

Why is this principle a fundamental part of criminal jurisprudence?  Because punishment is outside the record as far as the jury is concerned, and its only effect can be to persuade the jury in its decision as to guilt or innocence.

620 F.2d at 1386 (Doyle, J., concurring).

Consistent with this general rule, the Court instructed the jurors that they should not discuss sentencing in any way during the deliberations.  See Court's Final Jury Instructions with Citations, Instruction No. 38, at 78, filed September 28, 2006 (Doc. 394).  In its Instruction No. 38, the Court stated: "If you find Mr. Vigil guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict." Id. Other than substituting Vigil's name for the phrase "the defendant," the Court's instructions track verbatim the Tenth Circuit's Criminal Pattern Jury Instruction 1.20.  See Tenth Circuit Criminal Pattern Jury Instruction 1.20, at 25 (2005).  The Court provided each juror with a written copy of the Court's instructions, including Instruction No. 38, for use during deliberations.  Thus, the jury as a whole was plainly instructed not to reach any conclusion as to sentencing.  Again, there is no evidence or allegation that the jurors did not do as they were instructed.

There should have been no discussion of sentencing in the jury's deliberations.  Assuming that to have been the case, no juror should have insight regarding what the jury as a body thought about what Vigil's possible sentence would be or how that possible sentence might have influenced the jury's verdict.  All the Court would receive is a juror's individual opinion -- after the trial -- regarding what the sentence should be.  At this point in the proceedings, each juror's individual

-10-

position is no different than other citizens who may have an interest in this case.  The sentencing

views of members of the jury should not be part of the record in this case, and the trial jurors should

not participate in the sentencing hearing.

### C.     THE COURT SHOULD BE CAUTIOUS ABOUT LISTENING TO EVIDENCE RELATED TO THE JURY'S DELIBERATIONS.

The Court recently had the opportunity to consider a defendant's proffer of jurors' post-

verdict statements in support of a defendant's motion for acquittal and concluded that such use is

disfavored:

> After the entry of a verdict, rule 606(b) of the Federal Rules of Evidence
> prohibits a juror from testifying regarding anything that occurred "during the course
> of the jury's deliberations or to the effect of anything upon that or any other juror's
> mind or emotions as influencing the juror to assent to or dissent from the verdict or
> indictment or concerning the juror's mental processes in connection therewith." Fed.
> R. Evid. 606(b).  In addition to live testimony, the prohibition extends to the
> consideration of any juror affidavit or any other evidence of any juror's statement
> concerning a matter about which juror testimony is proscribed.  See id. ("Nor may
> a juror's affidavit or evidence of any statement by the juror concerning a matter about
> which the juror would be precluded from testifying be received for these purposes.").
> This rule is an expression of the public policy preference for finality in litigation and
> the recognition that "common fairness requires that absolute privacy be preserved for
> jurors to engage in the full and free debate necessary to the attainment of just
> verdicts." Tanner v. United States, 483 U.S. 107, 124 (1987).  Without such a rule,
> jurors would undoubtedly be subject to harassment from losing parties attempting to
> discover grounds on which to challenge verdicts and, therefore, "full and frank
> discussion in the jury room, jurors' willingness to return an unpopular verdict, and
> the community's trust in a system that relies on the decisions of laypeople would all
> be undermined by a barrage of postverdict scrutiny of juror conduct." Id. at 120-21.

> Rule 606(b) contains one exception, allowing a juror to testify with regard to
> "whether extraneous prejudicial information was improperly brought to the jury's
> attention or whether any outside influence was improperly brought to bear upon any
> juror."[2] Fed. R. Evid. 606(b).  Nevertheless, in light of the policy factors underlying

---

[2]On April 12, 2006, the Supreme Court of the United States adopted a new version of rule
606(b), effective December 1, 2006.  The amended version of the rule now permits juror testimony
to also be used to prove that the verdict reported was the result of a clerical mistake in entering the

the general rule, this exception has been narrowly construed.  See Tanner v. United States, 483 U.S. at 117-27 (prohibiting juror testimony regarding jurors' drug and alcohol use during a criminal trial).

United States v. Foghorn, No. CR03-2365 JB, Memorandum Opinion and Order at 22-23, filed October 20, 2006 (Doc. 240).

The Court acknowledges, of course, that rule 606(b) does not similarly restrict its consideration of evidence at the sentencing phase.  See United States v. Banda, 168 Fed. Appx. 284, 289 (10th Cir. 2006)("Plainly, the Federal Rules of Evidence do not apply at sentencing.")(quoting United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir. 1990)).  Further, the parties have not cited, and the Court has not discovered in its independent research, any case discussing the propriety of allowing a juror to testify at a sentencing hearing.  Nevertheless, the Court believes that the public policy underlying rule 606(b) counsels for the exclusion of juror testimony at sentencing.  The Court believes that "[p]recluding this evidence represents a choice of the 'lesser of two evils' -- not redressing a [defendant's] injury in favor of upholding the public policy promoting private and unassailable juror deliberations." Robinson v. Gibson, 35 Fed. App. 715, 720 (10th Cir. 2002).

Although the Court did not locate a case on point, it believes that the dominant theme in federal appellate caselaw, as well as the Federal Rules of Evidence, is to limit the jury's role in our

---

verdict on the verdict form.  See Fed. R. Evid. 606(b) advisory committee's note (2006).  The relevant portion of the rule now states:

> But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).

criminal process to the determination of guilt and innocence. In United States v. Jones, 132 F.2d 232 (5th Cir. 1998), the United States Court of Appeals for the Fifth Circuit stated that rule 606(b) bars juror testimony regarding at least four topics: (i) the jury's methods or arguments during deliberations; (ii) any particular matter's effect upon an outcome in the deliberations; (iii) any particular juror's mindset or emotions during deliberations; and (iv) the testifying juror's own mental process during deliberations. See 132 F.2d at 245.

While United States v. Jones is distinguishable because it was a capital case, and thus the jury participated in sentencing by finding aggravating factors necessary for the imposition of the death penalty, it remains instructive because the Fifth Circuit rebuffed the defendant's attempt to establish, through juror affidavits, that jury instructions at the sentencing phase caused jury confusion; specifically, the defendant had argued that because the Federal Rules of Evidence do not apply at sentencing, the district court erred in relying on rule 606(b) to bar juror affidavits impeaching the sentence. See id. at 246. The Fifth Circuit in United States v. Jones rejected this argument, because "[t]he reasons for not allowing jurors to undermine verdicts in jury trials . . . apply with equal force to sentencing hearings." Id. at 246 (citing Silagy v. Peters, 905 F.2d 986, 1009 (7th Cir. 1990), a case in which the United States Court of Appeals for the Seventh Circuit held that a juror's statements could not be used in a habeas corpus proceeding to impeach the jury's sentencing determination). The Fifth Circuit observed:

> Jury deliberations entail delicate negotiations where majority jurors try to sway dissenting jurors in order to reach certain verdicts or sentences. An individual juror no longer exposed to the dynamic offered by jury deliberations often may question his vote once the jury has been dismissed. Such self-doubt would be expected once extrinsic influences bear down on the former jurors.

United States v. Jones, 132 F.3d at 246. Because of this change in dynamic, the Fifth Circuit

-13-

concluded that it would "not allow a juror to change his mind after the jury has rendered a verdict." Id.

Information concerning the jurors' view of the evidence, or concerning the deliberations leading to the acquitted counts in this case, would all fall within the spirit, if not the letter, of this prohibition. Thus, while there is not a case on point precluding jurors from speaking at a sentencing, the policies behind the common-law rule and rule 606(b) suggest that the jurors should not speak at the sentencing. While the jurors cannot provide personal knowledge about Vigil or the allegations against him, they can talk knowledgeably about the deliberations. While what they may have to say about the deliberations might be interesting, and may be appropriate in other settings, the Court does not believe it to be so in open court. The Court believes that it should respect the sanctity of the deliberations and the verdict. Accordingly, the Court will not allow the jurors to speak about their deliberations at the sentencing.

### D.      THE COURT SHOULD ENTERTAIN ANY PROBLEMS WITH DELIBERATIONS IN A SEPARATE HEARING.

While the Court is not aware of any irregularities in the deliberations or extraneous information to which the jurors were exposed, there is the possibility that the jurors may want to discuss such. If that is the case, the Court should entertain such issues in a separate hearing, preferably before the sentencing hearing. The Court believes that the sentencing hearing should focus on the issues related to the sentencing and not on any jury issues.

### E.      THE JURORS HAVE NOTHING RELEVANT TO SAY AT THE SENTENCING.

In summary, the jurors do not have anything relevant to say to the Court at the sentencing hearing. The jurors have no personal knowledge of Vigil or of the allegations against him, and while

-14-

jurors play an extremely important role in the criminal justice system, that role is limited.  Jurors should not have considered possible sentences during deliberations, and any juror's post-verdict opinions about the sentence are not entitled to any more deference or consideration than any other citizen's opinion.  Moreover, the Court does not believe that it should hear details about the jury's deliberations, and should, consistent with the policy preferences implicated by federal appellate jurisprudence, respect the sanctity of the deliberations and the verdict.  In the end, the Court does not believe that the jurors would offer anything relevant to the Court's task at the sentencing.

The Court emphasizes that nothing herein is meant to denigrate the jury or its service in any way.  Indeed, the Court is grateful and admiring, more than the jurors probably will ever know, of their public service, dedication, commitment, and responsible attitude toward their difficult task. That their important and essential role  in the criminal justice system has its proper limits does not in any way mean the Court does not care about the jurors' thoughts, opinions, or concerns.  The Court's ruling merely reflects that it must now make its decision in the most efficient and knowledgeable way it can.  In the Court's best judgment, that does not include hearing from the jurors at the sentencing.  Accordingly, the Court will not entertain members of the trial jury's presentations at the sentencing hearing.

**IT IS ORDERED** that a few of the Vigil's family members and friends may speak briefly at his sentencing.  The jurors will not be permitted to speak at the sentencing.

_____
UNITED STATES DISTRICT JUDGE

-15-

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Jonathan M. Gerson
Steven C. Yarbrough
  Assistant United States Attorneys for the
    District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crowe
Bowles & Crowe
Albuquerque, New Mexico

– and –

Sam Bregman
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

     *Attorneys for the Defendant*