IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                           No. CR 05-2051 JB

ROBERT VIGIL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for New Trial, filed January 22, 2007 (Doc. 442)("Motion for New Trial"); and (ii) the Defendant Robert Vigil's Motion to Continue Evidentiary Hearing Scheduled for January 23, 2007 and to Continue Sentencing Hearing Set January 24, 2007, filed January 23, 2007 (Doc. 445)("Motion to Continue"). The Court held evidentiary hearings on these motions on January 23, 2007 and on January 24, 2007. The primary issues are: (i) whether the Court should grant a new trial on Count Twenty-Four of the Fifth Superseding Indictment because Ann Marie Gallegos has sent a letter to the Court stating that Federal Bureau of Investigation ("FBI") agents threatened to indict her if she cooperated with Defendant Robert Vigil in his defense; and (ii) whether the Court should continue hearings on these motions to allow Vigil to serve a subpoena on Gallegos and secure her presence. For reasons given at the hearing on January 24, 2007, for reasons consistent with the reasons given at that time, and to allow Vigil to serve Gallegos, the Court will grant his motions in part and deny them in part. The Court granted Vigil's request and held an evidentiary hearing on January 23, 2007 and continued it until January 24, 2007 to allow Vigil additional time to serve Gallegos. Based on the evidence Vigil

presented at that hearing, however, the Court will not grant a new trial on Count Twenty-Four of the Fifth Superseding Indictment and will not further continue the evidentiary hearing or vacate the sentencing hearing to allow Vigil to secure Gallegos' presence.

### FACTUAL BACKGROUND

In 2001, Gallegos received a telephone call from Vigil, then serving as Deputy Treasurer of the State of New Mexico, asking if she was interested in serving as a special assistant to then-Treasurer Michael Montoya. See Motion for New Trial, Exhibit B, Federal Bureau of Investigation Form 302, Interview of Ann Marie Gallegos at 1 (dated October 14, 2005)("302 Form"). Gallegos, who is married to Vigil's cousin Benny, sent her resume to Vigil in response to this solicitation. See id.; Memorandum of United States in Opposition To Defendant's Motion for New Trial at 2, filed January 23, 2007 (Doc. 443)("United States' Response"). Montoya interviewed Gallegos and offered her the position, which she accepted. See 302 Form at 1.

Montoya promoted Gallegos to Assistant Deputy Treasurer in 2002; Gallegos handled administration and human resource issues while serving in that capacity. See id. When Vigil became Treasurer, he reappointed Gallegos to the same position. See id. at 2. While working as Assistant Deputy for Vigil, Gallegos became more involved in the investment side of the Treasurer's Office, including the development of the aborted securities-lending program. See id. at 2-3.

When the FBI executed its search warrant at the New Mexico State Treasurer's Office on September 16, 2005, Gallegos was not present and was not interviewed. See United States' Response at 2. Gallegos was subpoenaed to appear before the grand jury in October 2005. See id.

The United States released her from the grand jury subpoena in return for her agreement to appear, with her counsel, for an interview at the United States Attorney's Office pursuant to a

limited-use immunity agreement. See id. Gallegos and her counsel, Dan Cron, appeared for the interview on October 14, 2005. See id. The FBI agents present at the interview summarized the contents of the interview in an FBI 302 Memorandum of Interview. See id. A copy of the Memorandum of Interview, stating that Mr. Cron represented Gallegos, was provided to Vigil's counsel. See Motion for a New Trial ¶ 8, at 3. The second paragraph of the Memorandum of Interview indicates that "[t]he interview was conducted after Gallegos signed a proffer letter with the United States Attorney's Office." 302 Form at 1.

**PROCEDURAL BACKGROUND**

The United States and Vigil each listed Gallegos on witness lists filed before the first trial. See Defendant's Witness List ¶ 15, at 2, filed April 10, 2006 (Doc. 153); Government's Witness List at 2, filed April 11, 2006 (Doc. 160). Vigil's first trial ended in a mistrial. See Order Declaring Mistrial, filed May 22, 2006 (Doc. 206). Neither party called Gallegos as a witness at the first trial.

On July 25, 2006, a grand jury returned a Fifth Superseding Indictment charging Vigil with twenty-four counts of racketeering and extortion in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), and the Hobbs Act, 18 U.S.C. §§ 1951 & 1952. See Fifth Superseding Indictment, filed July 25, 2006 (Doc. 259).

Count Twenty-Four of the Fifth Superseding Indictment charges:

Between May 2, 2005 and September 15, 2005, both dates being approximate and inclusive, in the State and District of New Mexico, the defendant Robert Vigil, did knowingly and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that the defendant Robert Vigil attempted to cause George Everage to provide money and property to another person, with Everage's consent, induced by wrongful use and threat of use of economic harm and under color of official right, in connection with Everage's efforts to work as the Securities Lending Oversight Manager for the New Mexico State Treasurer's Office.

Gallegos also appeared on Vigil's witness list filed before the second trial. See Defendant's Preliminary Witness List ¶ 18, at 2, filed August 22, 2006 (Doc. 299). Vigil represents that, during the second trial, he served a subpoena on Gallegos, and that he expected Gallegos' testimony to be exculpatory and directly related to Count Twenty-Four. See Motion for New Trial ¶ 2, at 1. The United States proffers that, during the second trial, Vigil's counsel told the United States' trial team that he served Gallegos with a subpoena to testify during Vigil's case. See United States' Response at 3.

The United States asserts that, based on Vigil's counsel's representations, FBI Special Agent Marcus McCaskill telephoned Mr. Cron and inquired whether Gallegos would be testifying. See id. The United States contends that Mr. Cron was unaware that Gallegos had been served with a subpoena, and that he indicated that he would speak with Vigil's counsel and with Gallegos. See id. The United States represents that McCaskill informed Mr. Cron about what subject areas the United States' counsel would likely cross-examine Gallegos regarding should she testify at trial, and that Mr. Cron ultimately told McCaskill he would recommend that Gallegos invoke her Fifth Amendment privilege against testifying at trial. See id.

Vigil represents that, shortly before Gallegos was to testify, Mr. Cron contacted Vigil's counsel, and advised that Gallegos would not testify and would invoke her Fifth Amendment rights should she be called. See Motion for New Trial ¶ 2, at 1. Vigil asserts that his counsel conducted a partial interview of Gallegos before Mr. Cron contacted them, but that his counsel was unable to fully interview Gallegos before Mr. Cron advised that she would assert her Fifth Amendment privilege to any question she may be asked regarding the New Mexico State Treasurer's Office ("NMSTO").

See id. ¶ 10, at 3.

Vigil chose not to present any evidence at the trial. The jury returned a verdict on September 30, 2006 finding Vigil not guilty on Counts One through Twenty-Three and guilty on Count Twenty-Four of the Fifth Superseding Indictment. See Verdict, filed September 30, 2006 (Doc. 408).

The Court scheduled and calendared the sentencing hearing on Vigil's conviction for January 24, 2007. On or about January 21, 2007, Vigil's counsel received a copy of a letter from Gallegos addressed to the Court. See id. ¶ 4, at 2; id., Exhibit A, Letter from Ann M. Gallegos to Hon. James O. Browning (dated January 20, 2007)("Gallegos Letter"). In her letter, Gallegos identifies herself as a former employee of the NMSTO who worked closely with Vigil and Everage. See Gallegos Letter at 1. Gallegos then discusses the genesis of the Securities Lending Oversight Manager ("SLOM") position, upon which Vigil's conviction was based. See id.

In her letter, Gallegos represents that it was her idea, not Vigil's, to recruit Samantha Sais to assist Everage in operating the securities-lending program. See Gallegos Letter at 1-2. Gallegos offered several exculpatory points, including references to Sais' past exemplary work performance and computer skills, which Gallegos believed were necessary to supplement Everage's operation of the securities-lending program. See id. at 2. Gallegos' letter also explained her reasons for refusing to testify at Vigil's trial. She wrote:

> Initially I had been interviewed with the FBI and I cooperated and told them what I knew. Months later, after I was subpoenaed by Mr. Robert Vigil to testify, I met with my attorney, Mr. Dan Cron. Mr. Cron informed me he had spent a considerable amount of time with the FBI on the phone. (I was not present). I was given the impression that the FBI could file charges against me, especially if I testified on Mr. Vigil's behalf.
>
> At the same time of trial, I had applied for the Finance Director position with the City of Las Vegas and felt intimidated by the conversation that Mr. Cron had had [sic] with

>the FBI. Any negative statement about me by the FBI would have terminated my job. . . . I am still quite intimidated and fear for myself (as I have been informed that I could still be charged).

Id. at 2-3.

On January 22, 2007, in light of Gallegos' statements and accusations, Vigil filed his Motion for a New Trial requesting an evidentiary hearing, and, upon the Court hearing the evidence, a new trial on Count Twenty-Four pursuant to rule 33 of the Federal Rules of Criminal Procedure and Brady v. Maryland, 373 U.S. 83 (1963). Vigil represents in the Motion for a New Trial that, at the evidentiary hearing, he intends to call Gallegos and Mr. Cron to testify about their conversations with FBI agents. See Motion for New Trial ¶ 15, at 5.

The Court scheduled a hearing on Vigil's Motion for New Trial for January 23, 2007 at 1:30 p.m. Just minutes before the hearing commenced, the Court received Vigil's Motion to Continue. See Transcript of Hearing at 2:25-3:3 (Court)(taken January 23, 2007)("Jan. 23 Transcript").[1] Vigil's Motion to Continue asserts that, upon information and belief, Vigil's counsel has never received a copy of a limited-use immunity agreement involving Gallegos, and that Vigil's counsel was unaware Gallegos had such an agreement until receiving the United States' Response to Vigil's Motion for a New Trial on January 23, 2007. See Motion to Continue ¶¶ 4, 6, at 2.

In his motion to continue, Vigil's counsel represented that he had unsuccessfully attempted to contact Mr. Cron on January 22, 2007, but was not able to reach him until the morning of January 23, 2007. See id. ¶ 3, at 2. At that time, Mr. Cron informed Vigil's counsel that he would appear for the hearing, but that Gallegos would not, and that Mr. Cron would assert attorney-client privilege

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

-6-

in response to questioning. See id. Mr. Cron also indicated that he would not accept a subpoena on Gallegos' behalf. See Jan. 23 Transcript at 6:8-12 (Bregman).

At the January 23, 2007 hearing, Vigil's counsel admitted that he had a telephone conversation with Gallegos during the second trial, unaware that she had retained counsel. See id. at 20:17-21:12 (Bregman). Vigil's counsel also informed the Court that, after receiving Gallegos' letter on January 21, 2007, he called Gallegos to confirm that it was actually she that had sent the letter. See id. at 19:15-17 (Bregman). Vigil's counsel represented that Gallegos offered to attend the January 24, 2007 sentencing hearing on Vigil's behalf, and that he informed her that she should consult with Mr. Cron to that regard. See id. at 19:20-23 (Bregman).

Vigil's counsel acknowledged that, since his receipt of Gallegos' letter, with the exception of requesting Mr. Cron accept a subpoena on her behalf, no efforts had been taken to serve a subpoena on Gallegos directly. See id. at 19:9-11 (Bregman). Gallegos did not attend the January 23, 2007 hearing. In Gallegos' absence, the Court indicated to the parties that it was inclined to hear all evidence the parties were able to present at that time, and would give Vigil the opportunity to call Gallegos as a witness before the January 24, 2007 sentencing hearing. See Jan. 23 Transcript at 44:4-11 (Court). Vigil's counsel agreed to this arrangement. See id. at 44:12 (Bregman).

Mr. Cron attended the January 23, 2007 hearing, and Vigil called him as a witness. Mr. Cron testified that he never informed Vigil's counsel that Gallegos' had spoken to the FBI under the condition of a limited-use immunity agreement. See id. at 57:10-12 (Cron). Mr. Cron also testified that at no time did anyone from the FBI or the United States Attorney's Office indicate that Gallegos may be charged with crimes if she testified at Vigil's trial. See id. at 61:24-62:15; 68:22-24 (Cron). Mr. Cron testified that he told Vigil's counsel and the United States Attorney's Office, during Vigil's

second trial, that if Vigil called Gallegos to testify at trial, she would likely assert her Fifth Amendment rights and not testify. See id. at 63:2-8 (Cron). Finally, Cron also testified that, if Vigil served Gallegos with a subpoena to testify at the evidentiary hearing on this motion, he would likely advise her to assert her Fifth Amendment rights and not testify. See id. at 74:13-18 (Cron). Vigil did not present any other evidence or call other witnesses at the January 23, 2007 hearing.

The United States did not ask Mr. Cron any questions. The United States called McCaskill as a witness. McCaskill testified that the 302 Form accurately reflected the content of the October 14, 2005 interview of Gallegos. See id. at 79:24-80:2 (McCaskill). McCaskill confirmed that, during the second trial, he called Mr. Cron to inquire whether Gallegos had been subpoenaed and to determine if she would testify. See id. at 82:22-25 (McCaskill). McCaskill indicated that he conveyed to Mr. Cron the subjects upon which the United States would seek to cross-examine Gallegos should she be called to testify and that he reviewed the contents of Gallegos' 302 form with Mr. Cron. See id. at 83:3-11; 84:12-14 (McCaskill).

At the continuation of the hearing on January 24, 2007, Vigil's counsel represented that he had been unable to serve Gallegos, that she was not present, and requested the Court to consider both motions based on the evidence and testimony previously presented. See Transcript of Hearing at 3:4-10 (Bregman)(taken January 24, 2007)("Jan. 24 Transcript").

## BRADY V. MARYLAND

In Brady v. Maryland, the Supreme Court of the United States explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court

extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. See id. at 153. Finally, the Supreme Court has refined Brady v. Maryland and clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different'" Kyles v. Whitley, 514 U.S. 419, 433 (1995)(quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). See United States v. Summers, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request.").

## **RULE 33**

Rule 33 authorizes the court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The rule provides, however, that "any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(c). Morever, the United States Court of Appeals for the Tenth Circuit has emphasized that rule 33 "motions for a new trial based on newly discovered evidence are generally disfavored and should be granted only with great caution." United States v. Watson, No. 05-5193, 2006 U.S. App. LEXIS 30197, at *7 (10th Cir. Dec. 7, 2006). Before a new trial may be granted on newly discovered evidence not involving a prosecutorial violation of Brady v. Maryland, a defendant must satisfy a five-part test: (i) the defendant did not discover the evidence until after trial; (ii) the failure to learn of the evidence did not result from the defendant's own lack of diligence; (iii) the new evidence is more than merely impeaching; (iv) the new evidence is material to principal

issues; and (v) the new evidence seriously undermines the result at trial. See United States v. Gwathney, 465 F.3d 1133, 1144 (10th Cir. 2006).

## ANALYSIS

While Vigil's motions contain a number of arguments, in essence, he is contending that actions of the United States' agents prevented him from ascertaining how Gallegos would have testified until she summarized her potential testimony in a letter sent after trial and on the weekend before sentencing. Vigil argues that the contents of Gallegos' letter constitute newly discovered evidence for purposes of rule 33, entitling him to a new trial. At a minimum, Vigil argues that the Court should permit an evidentiary hearing to allow the parties and the Court to reach a comprehensive understanding of the evidence Gallegos' testimony would have provided. Gallegos' letter fails, however, to satisfy rule 33's requirements. Moreover, Gallegos' letter, with the other evidence in the record and before the Court, does not demonstrate that the United States coerced her from testifying on Vigil's behalf. Finally, the Court has given Vigil multiple opportunities to present Gallegos' testimony, and he has been unable to do so. The Court will grant Vigil's motion for a new trial to the extent it requests an evidentiary hearing; the Court will otherwise deny the motion. The Court will dismiss Vigil's motion to continue as moot.

**I. VIGIL CANNOT SATISFY THE FIVE-PART TEST ARTICULATED IN UNITED STATES V. GWATHNEY.**

In United States v. Gwathney, the Tenth Circuit articulated five elements a defendant needs to establish before the Court should award a new trial on grounds other than a violation of the prosecution's obligation to disclose exculpatory information under Brady v. Maryland. Without Gallegos present to testify about what she says in her letter, there is no "new" evidence. Because the

-10-

Court does not believe that Vigil has established the elements enumerated in United States v. Gwathney under the high standard applicable to a rule 33 motion, it will deny his request for a new trial on all bases other than Brady v. Maryland, and consider the Brady v. Maryland allegations separately.

### A. VIGIL DID NOT DISCOVER GALLEGOS' EVIDENCE AFTER TRIAL.

While Vigil's counsel did not receive Gallegos' letter until January 21, 2007, this event does not mean that the information within the letter was unknown to Vigil until after trial. Vigil has a longstanding personal relationship with Gallegos. Gallegos worked with Vigil at the NMSTO for several years, both while Vigil was Deputy Treasurer and while Vigil was Treasurer. Gallegos is also a member of Vigil's family, married to Vigil's cousin. Regardless what Vigil's counsel knew and when he knew it, it is very likely Vigil had a good idea of what Gallegos' testimony would be if she were called as a witness.

The possibility that Gallegos' testimony may have been unavailable at trial, given her counsel's representation that he would advise her to assert her privilege against self-incrimination, does not render her testimony "new evidence" once the assertion of privilege is withdrawn. Even if Vigil shows that Gallegos was unavailable at trial, evidence known but unavailable at trial does not constitute "newly discovered evidence" within the meaning of the rule governing new trial motions. See United States v. Jasin, 280 F.3d 355, 362 (3d Cir. 2002); United States v. Pohlman, No. 95-2239, 1996 U.S. App. LEXIS 24775, at *13 (10th Cir. Sept. 20, 1996)(holding that when a former co-defendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not newly discovered if the defendant was aware of the proposed testimony prior to trial). Vigil has not convinced the Court that he learned anything new

from Gallegos' letter.

### B. VIGIL'S FAILURE TO ACQUIRE THE EVIDENCE AT ISSUE RESULTED FROM HIS OWN LACK OF DILIGENCE.

Vigil suggests that his failure to learn of Gallegos' evidence before trial was not a result of his lack of diligence. He appears to argue that his inability to fully interview Gallegos, the FBI agents tactics, and the FBI agents' inaccurate reporting on 302 Forms prevented him from acquiring this exculpatory information. The Court is dubious, however, that FBI agents' tactics prevented Vigil from learning of exculpatory evidence, and disagrees that Vigil was sufficiently diligent in pursuing such information.

Vigil's counsel represents that he talked to Gallegos during the trial, without her counsel's participation, because he was unaware that she had retained counsel. At that point, there was nothing to keep Vigil's counsel from asking any questions he wanted. Any failure to ascertain the allegedly new evidence is a result of his failure to ask, not anything the FBI did or did not do.

Vigil contends that what is especially concerning is that the United States' agents' alleged threats were made after Gallegos was served with a subpoena to testify on Vigil's behalf and several months after the FBI had interviewed Gallegos. See Motion for New Trial ¶ 6, at 2. Vigil argues that the FBI had no reason to contact Gallegos or her attorney other than to pressure her not to testify. See id. Vigil states that he is extremely concerned that the FBI intimidated this witness and used the threat of criminal prosecution to influence her decision regarding whether to testify. See id. ¶ 7, at 2. Vigil contends that, "[i]ronically, in a case of official extortion, it appears that the FBI may have used extortionary tactics to secure a conviction against Mr. Vigil." Id.

The Court heard from Mr. Cron and McCaskill and found them both credible. Neither

-12-

testified that McCaskill, or any other representative of the FBI or United States Attorney's Office, threatened to prosecute Gallegos if she testified at Vigil's trial.

Vigil also contends that Gallegos' version of events, as described in her letter, is "remarkably different" from the FBI's 302 report that was provided to Vigil. Id. ¶ 8, at 3. Vigil notes that the 302 Form indicates that Gallegos told the FBI agents that Vigil had recommended Sais for a "website position," 302 Form at 3, whereas Gallegos' letter indicates that it was she who suggested the NMSTO include Sais in the securities-lending project for her computer skills, see Gallegos Letter at 1-2. See Motion for New Trial ¶ 8, at 3. Vigil also points out that the 302 Form states that Gallegos did not work with Sais while Sais was an employee at the NMSTO, and "implies that Ms. Gallegos did not know Ms. Sais very well." Id. Gallegos' letter, in contrast, does not suggest Gallegos ever worked with Sais at the NMSTO, but says that Gallegos "had the opportunity to work with Ms. Sais on a legislative project and found her to be willing to work, eager to define and incorporate suggestions from the State Treasurer, Deputy State Treasurer and others." Gallegos Letter at 2.

Vigil contends that he discovered the evidence of Gallegos' testimony and the FBI's actions only upon receipt of her letter, which is dated January 20, 2007. Vigil represents that his failure to learn of this evidence before trial was not the result of his lack of diligence. The irony in the discrepancies that Vigil points out in his motions, however, is that the facts referenced are almost certainly to have been within the scope of his personal knowledge. Vigil obviously would have known if it was himself or Gallegos who suggested Sais for the securities-lending project. Similarly, based on the family and professional relationships Vigil maintained with Gallegos, Vigil would have very likely known how well Gallegos and Sais were acquainted. Vigil was able to acquire this information, even if his counsel was not able to "fully interview" Gallegos before the second trial in

this case.

Vigil has not presented evidence that he took affirmative steps to acquire Gallegos' testimony. There is no evidence that Vigil's counsel attempted to interview Gallegos in the presence of her counsel. Vigil did not call Gallegos at trial, nor did his counsel adduce any testimony outside the jury's presence that Gallegos would assert her Fifth Amendment rights and not testify for fear of criminal prosecution. See United States v. Quintanilla, 193 F.3d 1139, 1147-48 (10th Cir. 1999)(finding defendant did not exercise diligence when he did not call a co-defendant to testify or attempt to introduce affirmations outside the jury's presence that the co-defendant would invoke his Fifth Amendment rights)

### C. THE EVIDENCE IN GALLEGOS' LETTER IS MOSTLY, IF NOT ENTIRELY, IMPEACHING AND DOES NOT UNDERMINE THE RESULT AT TRIAL.

Vigil argues that evidence that the FBI agents who testified in this case intimidated a witness is powerful impeachment material. See Motion for New Trial ¶ 11, at 4. Vigil also asserts, however, that the content of Gallegos' letter directly contradicts the United States' theory of Count Twenty-Four, and therefore satisfies the third and fourth elements of United States v. Gwathney. See Motion for New Trial ¶ 11, at 4. Vigil relies heavily upon Gallegos' statement that Vigil did not suggest or recommend Sais work with Everage and contends that this fact undermines the United States' theory that Vigil was attempting to extort a job for Sais. See id.; Jan. 23 Transcript at 13:21-24 (Bregman).

The Court believes that the evidence Vigil emphasizes is mostly, if not entirely, impeaching. The Court notes that there was extensive testimony at trial related to Sais' qualifications and the NMSTO's purposes for insisting on her inclusion in the securities-lending project. In addition, Everage and the FBI Agents who completed and authorized Gallegos' 302 Form, McCaskill and

Special Agent Margaret J. Russin, all testified at the trial and were subject to vigorous cross-examination.

Finally, Vigil argues that, if the information in Gallegos' letter had been presented to a jury, it would have likely produced an acquittal. See Motion for New Trial ¶ 12, at 4. The Court disagrees. First, the Court does not believe that whether hiring Sais was Vigil's or Gallegos' idea was a dispositive issue with respect to Count Twenty-Four. Vigil's intent in extorting Everage and related motives are certainly material issues, but the genesis of a particular method of extortion is a secondary issue at best. As discussed above, evidence related to the more critical issues -- Sais' professional and academic background and the NMSTO's reasons for wishing to include her in the securities-lending operation -- was presented to the jury.

Taking all these considerations in aggregate, and in light of the Tenth Circuit's admonition that motions for a new trial are disfavored and should be granted with caution, the Court concludes that Vigil has not demonstrated a new trial on Count Twenty-Four is in the interest of justice. Gallegos appears to be avoiding process, does not want to testify, and, according to Mr. Cron, likely will invoke her Fifth Amendment rights if called. On the present record, there is no competent new evidence that Vigil did not know about before trial or could not have known about, and the potential information does not appear to be more than impeachment evidence or cumulative.

## II.     THE UNITED STATES HAS NOT VIOLATED ITS OBLIGATION TO DISCLOSE EXCULPATORY EVIDENCE UNDER BRADY V. MARYLAND.

Vigil also contends that he is entitled to a new trial under the holding in Brady v. Maryland. See Motion for New Trial ¶ 13, at 4. To establish a Brady v. Maryland violation, Vigil must show that the prosecution suppressed exculpatory evidence that was material to his defense. See Scott v.

Mullin, 303 F.3d 1222, 1230 (10th Cir. 2002).

The Court is not convinced that the United States' agents suppressed any of the information in Gallegos' letter. At the January 23, 2007 hearing, McCaskill testified that the 302 Form was, to the best of his knowledge, an accurate reflection of his and Russin's interview with Gallegos and the Court found him credible. In addition, the Court has already found that the content of Gallegos' letter does not contain any information that Vigil did not have before trial, or reasonably could have been expected to have before trial. The Court concludes that the United States did not prevent Vigil from attaining any exculpatory information.

Moreover, while the Court agrees that the information in Gallegos' letter could have been helpful to Vigil, it does not believe that the evidence was more than impeaching, and notes that, in any case, much of the evidence was actually presented at trial. The Court does not share Vigil's view that the evidence that was not presented can be characterized as dispositive of material issues in Vigil's defense. The Court will not find a violation under Brady v. Maryland with respect to the evidence presented in Gallegos' Letter.

## III.   THE COURT WILL DISMISS VIGIL'S MOTION TO CONTINUE AS MOOT.

The Court has given Vigil multiple opportunities to present Gallegos' testimony. The Court has scheduled last-minute hearings and availed itself to Vigil so that he could provide the testimony he asserts is important to the resolution of his motion for a new trial. Because Vigil has been repeatedly unable to serve a subpoena on Gallegos, and because the Court does not believe that the evidence raised in her letter warrants a new trial, the Court will dismiss his motion to continue as moot. If at some point Vigil secures Gallegos' testimony, and it satisfies the requirements of rule 33, he can still move for a new trial on the basis of newly discovered evidence.

**IT IS ORDERED** that Defendant's Motion for New Trial is granted in part and denied in part. The Defendant Robert Vigil's Motion to Continue Evidentiary Hearing Scheduled for January 23, 2007 and to Continue Sentencing Hearing Set January 24, 2007 is dismissed as moot.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
Jonathon M. Gerson
Steven C. Yarbrough
  Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

– and --

Sam Bregman
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

  *Attorneys for the Defendant*