## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                          No. CR 05-2051 JB

ROBERT VIGIL,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Release Pending Appeal, filed January 29, 2007 (Doc. 447)("Motion for Release"). The primary issue is whether the Court should release Defendant Robert Vigil pending appeal because his appeal allegedly presents a close question of law or fact likely to result in reversal or an order for a new trial. While the Court does not believe that Vigil is a danger to any person or to the community, that there is a significant risk he will flee, or that he is interposing his appeal for purposes of delay, the Court also does not believe that his appeal presents substantial questions of law or fact likely to result in reversal or an order for a new trial. The Court will deny the motion.

## PROCEDURAL BACKGROUND

On July 25, 2006, a grand jury returned a Fifth Superseding Indictment charging Vigil with twenty-four counts of racketeering and extortion in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), and the Hobbs Act, 18 U.S.C. §§ 1951 & 1952. See Fifth Superseding Indictment, filed July 25, 2006 (Doc. 259)("Indictment"). Count Twenty-Four of the Fifth Superseding Indictment charges:

> Between May 2, 2005 and September 15, 2005, both dates being approximate and inclusive, in the State and District of New Mexico, the defendant Robert Vigil, did knowingly and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that the defendant Robert Vigil attempted to cause George Everage to provide money and property to another person, with Everage's consent, induced by wrongful use and threat of use of economic harm and under color of official right, in connection with Everage's efforts to work as the Securities Lending Oversight Manager for the New Mexico State Treasurer's Office.

Indictment at 31. The Court held a jury trial in this case from September 5, 2006 to September 30, 2006.

On September 28, 2006, at the close of the United States' evidence, Vigil moved, under rule 29 of the Federal Rules of Criminal Procedure, to dismiss all charges. The Court took the motion under advisement, but indicated to the parties that it was inclined to submit all the counts to the jury. See Transcript of Trial at 147:2-149:1 (Court)(taken September 28, 2006). Subsequent to the Court reserving its ruling, Vigil chose not to present any evidence.

The jury returned a verdict on September 30, 2006, finding Vigil not guilty on Counts One through Twenty-Three and guilty on Count Twenty-Four of the Fifth Superseding Indictment. See Verdict, filed September 30, 2006 (Doc. 408). On October 5, 2006, Vigil filed two motions, pursuant to rule 29, requesting that the Court enter a judgment of acquittal on Vigil's behalf. Vigil's first motion primarily asserted that, even when all the evidence presented at trial is considered in the light most favorable to the jury's verdict, the facts of this case related to the attempt of the New Mexico State Treasurer's Office ("NMSTO") to engage in securities lending do not constitute a violation of the Hobbs Act. See Motion to Set Aside Verdict and for Judgment of Acquittal on Count 24 of the Fifth Superseding Indictment Under Fed. R. Crim. P. 29 or in the Alternative for New Trial on Count 24, filed October 5, 2006 (Doc. 411)("Impossibility Motion"). Vigil's first

motion argued: (i) that the jury's verdict was ambiguous regarding upon what method of extortion it premised its conviction; (ii) that Everage never acquired a property interest that Vigil could extort; (iii) that Vigil's actions did not affect interstate commerce; and (iv) that Vigil's conviction offends due process because the Hobbs Act does not provide adequate notice that the conduct the United States alleges violates the Act. See id. Vigil's second motion argued that the evidence presented at trial, when considered in the light most favorable to the jury's verdict, was insufficient to sustain a conviction for attempted extortion because the United States failed to prove that Vigil took a substantial step toward the commission of the crime. See Defendant's Motion to Set Aside Verdict and for Judgment of Acquittal on Count 24 of the Fifth Superseding Indictment Under Fed. R. Crim. P. 29 as the Evidence is Insufficient to Sustain a Conviction, filed October 5, 2006 (Doc. 410)("Substantial Step Motion").

The Court issued a Memorandum Opinion and Order denying Vigil's Impossibility Motion on January 12, 2007. See Memorandum Opinion and Order, filed January 12, 2007 (Doc. 436)("Impossibility Opinion"). The Court determined that the jury's general verdict, although ambiguous as to upon which theory the jury premised its conviction, was not invalid and that the evidence was sufficient for a reasonable jury to find that Vigil attempted to extort Everage under either theory submitted to the jury -- either by placing him in fear of economic harm and/or under color of official right. See id., Part I.C, at 27-38. The Court concluded that Everage's reasonable expectation of some profit, his right to compete fairly for government contracts, and his right to conduct his business free from coercion all established a property interest that the jury could have determined Vigil attempted to extort. See id., Part II, at 38-47. In addition, the Court ruled that Vigil's attempt to manipulate monies generated by securities lending -- an activity involving

interstate activity -- established the requisite nexus between Vigil's conduct and interstate commerce necessary to fall within the auspices of the Hobbs Act.  See id., Part III, at 47-55.  Finally, the Court held that the Hobbs Act put Vigil on sufficient notice that his actions were illegal, and thus his conviction does not offend due process.  See id., Part IV, at 55-57.

The Court issued a Memorandum Opinion and Order denying Vigil's Substantial Step Motion on January 19, 2004.  See Memorandum Opinion and Order, filed January 19, 2004 (Doc. 440)("Substantial Step Opinion"). The Court concluded that Vigil took substantial steps toward the completion of the crime -- beyond mere preparation and planning -- and that those steps, taken individually and in the aggregate, corroborated his intent to commit the crime in a manner that brought his actions within a dangerous proximity of success.  See id. at 22.  The Court held that the evidence, viewed in the light most favorable to the jury's verdict, was sufficient for a reasonable jury to find Vigil guilty beyond a reasonable doubt of the crimes the United States charged in Count Twenty-Four.

On January 24, 2007, the Court sentenced Vigil to serve a term of imprisonment of thirty-seven months.  See Memorandum Opinion and Order at 149, filed February 13, 2007 (Doc. 451)("Sentencing Memorandum").  Vigil, through his attorneys of record, move the Court for his release pending his appeal.  See Motion for Release at 1.  Vigil's Motion for Release Pending Appeal suggests that he intends to appeal the Court's denial of his two rule 29 motions.

Vigil has not yet submitted an appellate brief or filed a Notice of Appeal.  See United States' Response to Defendant's Motion for Release Pending Appeal at 1 n.1, filed February 6, 2007 (Doc. 448)("United States' Response").  The United States argues that, because the Court has rejected all these arguments, and because all factual inferences will be drawn in favor of the United States on

appeal, the Court should deny Vigil's motion without a hearing.

## 18 U.S.C. § 3143(b)

18 U.S.C. § 3143 establishes the criteria a convicted criminal defendant must meet before a court should grant the defendant's release pending a sentence or appeal.  For a defendant who has been sentenced, the statute states that the defendant "shall" be detained unless he can demonstrate "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community . . . [and] that the appeal is not for the purpose of delay and raises a substantial question of law or fact" that is likely to result in reversal or an order for a new trial.[1]  18 U.S.C. § 3143(b)(1)(A)(i)-(ii).  See United States v. Fisher, 55 F.3d 481, 485 n.2 (10th Cir. 1995).

The United States Court of Appeals for the Tenth Circuit has noted that "[t]he burden is on the defendant to show that all criteria of [18 U.S.C.] § 3143(b) are met." United States v. Ward, No. 91-6172, 1991 U.S. App. LEXIS 12048, at **1-2 (10th Cir. June 3, 1991).  See United States v. Affleck, 765 F.2d 944, 946 (10th Cir. 1985)(en banc). The Tenth Circuit has recognized that "[p]ending appeal, bail for most defendants must be denied." United States v. Ingle, 454 F.3d 1082, 1084 (10th Cir. 2006). To avoid detention, a defendant must meet the conditions of 18 U.S.C. § 3143(b)(1) and clearly show "exceptional reasons" why detention is inappropriate.  United States v. Peterson, No. 99-2080, 1999 U.S. App. LEXIS 13642, at **2-3 (10th Cir. June 21, 1999). Placing

---

[1] 18 U.S.C. § 3143 also authorizes the Court to release the defendant if a contrary finding on the substantial question is likely to result "in a sentence that does not include a term of imprisonment," 18 U.S.C. § 3143(b)(1)(B)(iii), or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," 18 U.S.C. § 3143(b)(1)(B)(iv).  Because the United States concedes that, if Vigil were to prevail on appeal, "his appeal would likely result in a reversal or an order for a new trial," and because the Court agrees with the United States, the Court will confine its analysis to whether a contrary finding on the substantial questions Vigil raises would result in reversal or an order for a new trial.  United States' Response at 5.

the burden of proof on the defendant is appropriate, because "these standards give considerable weight to any special government interest in detention." Demore v. Hyung Joon Kim, 538 U.S. 510, 578 (2003)(Breyer, J., concurring in part and dissenting in part).

In United States v. Affleck, the Tenth Circuit, sitting en banc, adopted the two-step approach the United States Court of Appeals for the Third Circuit articulated in United States v. Miller, 753 F.2d 19 (3d Cir. 1985), for determining whether a defendant had satisfied the requirements of 18 U.S.C. § 3143(b)(1)(B). See United States v. Affleck, 765 F.2d at 952.

> First, the court must decide that the appeal raises a "substantial" question of law or fact. Second, "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."

Id. (quoting United States v. Miller, 753 F.2d at 24). The Tenth Circuit explained that "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. . . . [and] is a 'close' question or one that very well could be decided the other way." United States v. Affleck, 765 F.2d at 952 (quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985)). The determination "whether a particular question is 'substantial' must be determined on a case-by-case basis." United States v. Affleck, 765 F.2d at 952. Finally, the Tenth Circuit has drawn a distinction between the burden of proof a defendant must meet under 18 U.S.C. § 3143(b)(1)(A), which requires clear and convincing evidence that a defendant is not a flight risk or a danger to the community, and 18 U.S.C. § 3143(b)(1)(B), which requires the defendant prove the existence of a substantial question likely to result in reversal or a new trial by a preponderance of the evidence. See United States v. Meyers, 95 F.3d 1475, 1489 (10th Cir. 1996).

<u>ANALYSIS</u>

Because 18 U.S.C. § 3143(b) assumes an appeal has already been filed, the Court will decide this motion assuming that Vigil has already filed an appeal.  The Court will also assume that Vigil will raise the same arguments on appeal that he has asserted in his motion.  The Court believes that Vigil has established by clear and convincing evidence that he is neither a flight risk nor a danger to the community.  The Court does not believe, however, that Vigil has established, by a preponderance of the evidence, the existence of a "close" question of law or fact, or one that very well could be decided the other way.  The Court will not release Vigil pending appeal.

I.    **VIGIL HAS, BY CLEAR AND CONVINCING EVIDENCE, OVERCOME THE PRESUMPTION OF DANGER TO THE COMMUNITY AND HAS SHOWN THAT HE IS NOT A FLIGHT RISK.**

In its Response to Vigil's motion, the United States asserts that Vigil is a dangerous man who is a flight risk.  <u>See</u> United States' Response at 5-6.  The Court disagrees.  The Court does not believe Vigil poses a danger to the safety of any person or to the community.  Vigil is also unlikely to flee.  Because Vigil is neither a flight risk nor a danger to the public, if Vigil presents a substantial question on appeal that would likely result in reversal or an order for a new trial should the Court be overturned, the Court should release him pending appeal.

A.    **VIGIL HAS SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT HE IS NOT A DANGER TO THE COMMUNITY.**

Vigil argues that there is no indication that he ever has been or is going to be a danger to any person or the community.  <u>See</u> Motion for Release at 2.  He points out that he was convicted of one count of attempting to commit extortion, a white-collar crime, and represents that he is a peaceful man.  <u>See</u> <u>id.</u>  That a jury found beyond a reasonable doubt that Vigil committed a serious felony,

-7-

however, creates a presumption that he is dangerous.  <u>See</u> <u>United States v. Jones</u>, 463 U.S. 354, 364 (1983)("The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness."); <u>United States v. Koon</u>, 6 F.3d 561, 567 n.1 (9th Cir. 1993)("In [18 U.S.C. § 3143(b)], Congress established a rebuttable presumption of dangerousness in all post-trial release cases.").  Nevertheless, regardless whether the Court presumes that Vigil presents a threat to anyone or merely finds that he could be, in certain circumstances, a threat, Vigil has, by clear and convincing evidence, overcome the presumption of dangerousness and established to the Court's satisfaction that he is not, under his current circumstances, presently a danger to anyone or to the community.

The Court has previously found, by at least a preponderance of the evidence, that Vigil was a member of a conspiracy to receive kickbacks in exchange for NMSTO business, and the jury convicted him of attempting to condition the receipt of a state contract upon the making of a payment to his designee.  <u>See</u> Sentencing Memorandum at 82, 109.  The United States characterizes Vigil as "completely unapologetic" for this behavior and contends that, because Vigil has not acknowledged the wrongful nature of his actions, there is nothing to assure the Court or the public that he will not continue to engage in similar conduct.  <u>See</u> United States' Response at 6.

The United States' argument overlooks the significance of the fact that Vigil was convicted of a white-collar crime involving abuse of a public office; it is highly unlikely that Vigil will be able to obtain another position that will allow him to commit a similar crime.  Indeed, as a convicted felon, he will not be allowed to hold public office and therefore will not and cannot engage in the same or similar activity for which he was convicted.  <u>See</u> N.M. Stat. Ann. § 10-1-2 ("No person convicted of a felonious or infamous crime, unless such person has been pardoned or restored to

political rights, shall be qualified to be elected or appointed to any public office in this state."). Considering the effect that this matter has had on Vigil's reputation, it is highly unlikely that he will ever hold a position of trust or authority.

Second, Vigil should have learned lessons through his ordeal that will deter him from similar conduct in the future, even if he does not think what he did was wrong or unlawful. The Court thus disagrees with the United States' argument that there is no reason to believe that Vigil would not engage in the same or similar conduct, and will give more weight to what it believes are the fundamentally changed circumstances of Vigil's life. Under Vigil's present circumstances, the Court believes that he has shown by clear and convincing evidence that he does not present any credible threat to the public.

There is no evidence that Vigil presents any other danger to the safety of any person or to the community. His conviction is not for a violent crime, and there is no evidence that Vigil has a history of violence or a violent demeanor. To the contrary, based on the evidence presented at trial, and the many letters and testimonials the Court considered for the purposes of sentencing, Vigil appears to be a considerate man attached to his family and community.

While Vigil was a danger to Everage and to the community when he was in public office, there is no indication that Vigil will be a danger to any person or to the community in the near future. Accordingly, the Court believes that Vigil has, even without acknowledging his wrongdoing, demonstrated by clear and convincing evidence that he is not a danger to the community.

**B.    VIGIL HAS SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT HE IS NOT A FLIGHT RISK.**

The Court received a considerable amount of information about Vigil at his sentencing as

well as in his present motion.  Vigil is fifty-three years old and has no criminal record.  As the Court

has previously noted, he appears to have very strong ties to his family and community.  Vigil was

born in  Las Vegas, New Mexico, and has never lived outside of New Mexico.  See Motion for

Release at 2.  He has spent almost his entire life in the Las Vegas area.  See id.

Vigil has been married for thirty-three years.  See id.  He has two daughters and a grandson.

See id.  His wife and children, as well as his sixteen brothers and sisters, all reside in New Mexico.

See id.  Vigil contends that New Mexico "is the place where all the people live who are close to his

heart, and whose support he depends on now more than ever."  See id.

The United States acknowledges that he has strong ties to the community, but points out that,

now that the Court has sentenced Vigil, he faces the prospect of spending the next three years in

prison.  See United States' Response at 6.  The United States further argues that, should it prevail

on a cross-appeal of Vigil's sentence, he likely would face an even greater sentence.  See id.  The

United States contends that these prospects give Vigil an incentive to flee, and that, if he should

decide to flee, he has sufficient resources to live comfortably abroad for some period of time.  See

id.

The Court is convinced, however, that other factors pertinent to this issue far outweigh those

that the United States advances.  That he now faces thirty-seven months in prison does not make him

more of a flight risk than before trial, and certainly not more of a flight risk than during the period

between his conviction and his sentencing, as he was previously facing a potential twenty-year

sentence.  The Court has now spent considerable time with Vigil over the last several months, and

the Court is convinced that he is not likely to flee if released.  Vigil has expressed and shown great

respect for the Court, and has expressed his appreciation for its efforts in his case.  There is nothing

in Vigil's past, either in his recent dealings with the Court or otherwise, that would suggest he is a flight risk.  He has cooperated fully with the United States Probation Office ("USPO") during the pendency of this case.  Vigil agreed to be fitted with a tracking device and to verify his location with the USPO, steps that further ensure he will not flee.  The Court believes that, because of his age and his close relationship to his family and community, Vigil is not likely to flee.

The Court recognizes that any time it releases a defendant pending appeal, there is a flight risk, and the Court cannot say that the risk of flight in Vigil's case is zero. Congress requires the Court, however, to make its best judgment by clear and convincing evidence, not beyond a reasonable doubt,  with certainty, or with absolute guarantees.  Vigil has presented clear and convincing evidence that he is not a flight risk.  The Court believes that it is a sound exercise of its discretion to determine this issue in Vigil's favor.

## II.    VIGIL'S APPEAL IS NOT FOR THE PURPOSE OF DELAY.

If a defendant shows by clear and convincing evidence that he is neither a flight risk nor a danger to the community, he must then show that his appeal is not for the purpose of delay.  See 18 U.S.C. § 3143(b)(1)(B).  The United States does not contend that Vigil's appeal is for the purpose of delay.  See United States' Response at 4.  The Court agrees.  Vigil has consistently raised these issues and appears to genuinely believe that the actions he engaged in do not constitute a crime under the Hobbs Act.  The Court does not believe that he is making his arguments for the purpose of delay.

## III.   THE COURT IS NOT CONVINCED THAT VIGIL WILL RAISE A "SUBSTANTIAL" ISSUE ON APPEAL.

In this case, the Court need only undertake the first step of the two-step analysis the Tenth Circuit adopted in United States v. Affleck for determining whether a defendant has satisfied the

-11-

requirements of 18 U.S.C. § 3143(b)(1)(B).  If the Court concludes, as it will, that Vigil's appeal

does not contain a close question or one that very well could go the other way, it must detain him,

regardless how the second question is resolved.  On the other hand, if the Court were to determine

that Vigil's motion raises a substantial question, a conclusion it declines to reach, the United States

concedes, and the Court acknowledges that, if Vigil prevailed on appeal, his appeal would likely

result in a reversal or an order for a new trial.  See United States' Response at 5.

> **A.    VIGIL'S APPEAL DOES NOT RAISE A SUBSTANTIAL QUESTION OF LAW OR FACT LIKELY TO RESULT IN REVERSAL OR AN ORDER FOR A NEW TRIAL.**

In support of his contention that his appeal presents a close question or one that could be

decided the other way, Vigil reasserts the same arguments that he has raised, a number of times, and

that this Court has, on several occasions, rejected.  Each of the arguments in Vigil's motion was

raised in some form at the conclusion of his first and second trials.  See Defendant Robert Vigil's

Motion to Dismiss Racketeering Acts Five Through Twenty-Six and Counts Seven Through Twenty-

Eight of the Fourth Superceding Indictment Under Fed. R. Evid. 29 at 7-9, filed May 10, 2006 (Doc.

196); Defendant Robert Vigil's Reply in Support of Motion to Dismiss Racketeering Acts Five

Through Twenty-Six and Counts Seven Through Twenty-Eight of the Fourth Superseding Indictment

Under Fed. R. Evid. 29 at 2-7, filed June 21, 2006 (Doc. 239); Transcript of Trial at 137:1-140:18

(Bowles)(taken September 28, 2006).[2]  On August 7, 2006, the Court issued a Memorandum Opinion

denying Vigil's request, made after his first trial, to dismiss the attempted extortion charge in the

face of arguments substantially similar to the ones Vigil presents in support of this motion.  See

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Memorandum Opinion at 19-26, filed August 7, 2006 (Doc. 268).  On January 12, 2007 and January 19, 2007, respectively, the Court issued its Impossibility and Substantial Step Opinions denying Vigil's rule 29 motions filed at the conclusion of his second trial.

The Court is cognizant that, should Vigil prevail on just one of these many issues, he will most likely either be acquitted or be granted a new trial.  Nevertheless, the Court is not convinced that it should grant Vigil's motion and allow him to remain on release during his appeal.

While the Court is not prepared to say, and need not find, that Vigil's appeal or his arguments are frivolous, the Court is also not convinced that Vigil's arguments present "a close question or one that very well could be decided the other way."  United States v. Affleck, 765 F.2d at 952 (internal quotations omitted).  While the Court is not required to handicap Vigil's chances on appeal to decide this motion, the Court does not believe his arguments on appeal will succeed.  The Court is not convinced that Vigil has a legitimate and reasonable disagreement with the Court's reasons for denying his rule 29 motions.  Consistent with the reasons that it has already advanced in its earlier opinions relevant to these issues, the Court is not convinced that Vigil's appeal will raise "substantial question[s] of law or fact" as the case law has defined that phrase.  See 18 U.S.C. § 3143(b)(1)(B).

The Court has recently filed a fifty-nine page Memorandum Opinion and Order, see Impossibility Opinion, and a forty-five page Memorandum Opinion and Order, see Substantial Step Opinion, that addressed each of Vigil's arguments and set forth in detail why those arguments are not correct.  Because the parties have repeatedly litigated the issues that Vigil again raises in his current motion and will raise on appeal, and because the Court has already exhaustively addressed these issues, the Court will incorporate rather than repeat what it has already written and said.  Thus, this Memorandum Opinion and Order will address only Vigil's argument that those issues present

close questions or ones that very well could be decided the other way.

Obviously, if the Court thought it was making decisions throughout the proceedings and trial that would result in a reversal, it would have made different decisions. While it is difficult for a district court to sit as its own appellate court, the applicable standards do not require it to go that far. It need only make a judgment whether the question is close or one that "very well" could go the other way. When the Court makes the best judgment that it can whether the questions presented are close or could go the other way, and when the Court attempts to be as objective as it possibly can be about Vigil's appeal, the Court is not convinced that his case presents issues for the Tenth Circuit that would allow the Court to release Vigil under <u>United States v. Affleck</u>.

.   **B.    VIGIL'S POST-TRIAL MOTIONS DO NOT RAISE CLOSE ISSUES OR ISSUES THAT "VERY WELL" COULD BE DECIDED THE OTHER WAY.**

Vigil has filed motions to set aside the verdict and for a judgment of acquittal. In his motions, Vigil raises several issues that would, if he were to succeed on any, would or could result in his acquittal for the count upon which he was convicted. Vigil represents that he intends to submit all of these issues to the Court of Appeals for review.

Between his rule 29 motions and this motion, the Court is familiar with these arguments. Neither of the rule 29 motions raises "substantial" questions as the case law has defined that term. While Vigil has raised many issues during these proceedings, and the Court has spent considerable time dealing with those issues, the precedent, the facts, and the jury have been and are against him on Count Twenty-Four.

### 1.    <u>Vigil's Impossibility Motion.</u>

In this motion, Vigil did not successfully demonstrate that his actions regarding Everage and

the aborted Securities Lending Oversight Manager ("SLOM") contract fail to constitute a violation

of the Hobbs Act, 18 U.S.C. § 1951.  The fundamental reason is that Vigil continues to advance that

he was engaged in "hard bargaining" and was simply trying to give a job to a friend, not engage in

extortion.  While these arguments were proper theories for Vigil to advance at trial, the jury did not

believe them to be accurate characterizations of what he did, and the Court does not think that such

factual issues will present substantial or close issues on appeal.

　　　　To have violated the Hobbs Act, Vigil must have wrongfully attempted to obtain property

from Everage, with Everage's consent, by wrongful use of actual or threatened fear or under color

of official right.  See 18 U.S.C. § 1951(b)(2).  Vigil argues that, even when all the evidence

presented at trial is considered in the light most favorable to the United States, as an appellate court

must, the facts of this case related to the NMSTO's attempt to engage in securities lending do not

constitute a violation of the Hobbs Act.  See Motion for Release at 3.  Specifically, Vigil argues that

he did not employ wrongful methods in his negotiations with Everage, see id. at 4-5, and that

Everage never acquired a property interest that he could extort, see id.  In addition, Vigil also argues,

apparently in the alternative that, if the factual evidence does constitute a Hobbs Act violation, the

United States did not prove that Vigil's conduct affected interstate commerce, as the Act requires,

see id. at 6, and that conviction on the charges contained in Count Twenty-Four offends due process,

because the Hobbs Act does not give fair warning that the facts of this particular count would violate

its terms, id. at 6.

　　　　　　　　a.　　**Vigil's "Hard Bargaining" Theory is Mostly a Sufficiency-of-the-Evidence Argument.**

　　　　Vigil first states the United States failed to prove that Vigil's actions were "wrongful."  Vigil

argues that he simply engaged in "hard bargaining" and that his actions were not "wrongful."  Vigil contends that, for the attempted act to be "wrongful," it must be a violation of the criminal laws of the United States or a State, and the extortionist must have no lawful claim to the "property" at issue. See id. at 4.  Under this definition, Vigil argues, his actions were not "wrongful."

The problem with this argument is with Vigil's definition of "wrongful."  He continues to argue that what he did must first violate some other state or federal law before he can violate the Hobbs Act.  He maintains that nothing he did in negotiations with Everage violated any criminal law. The problem is that he is wrong on the law and relies on a characterization of the facts that the jury has rejected.  See Impossibility Opinion at 28-32.

Vigil argues that, in the course of the negotiations for the SLOM position, Vigil, as Treasurer, had the legal right to suggest modification of the terms of the contract or to ask Everage to work out a compensation arrangement with another employee.  Vigil argues that, "at most," Vigil's interactions with Everage can be classified as a "hard bargaining" scenario that is not a crime.  See id. (citing United States v. Capo, 791 F.2d 1054, 1062-63 (2d Cir. 1986)("Capo I")).

Because of the evidence that was placed in the record at the second trial, the Court thinks it is unlikely this argument will succeed on appeal.  On appeal, as it did on the post-trial motions, the United States is entitled to have all factual inferences drawn in its favor.  See United States v. Mendivil, No. 05-2271, 2006 U.S. App. LEXIS 30768, at *2 (10th Cir. Dec. 12, 2006)(citing United States v. Isaac-Sigala, 448 F.3d 1206, 1210 (10th Cir. 2006)).  The Court has been convinced, after reviewing the record of both trials, that the United States has presented evidence that, rather than simply engaging in hard bargaining, Vigil used the power of his office and the threat of economic harm to attempt to force Everage to pay kickbacks to Michael Montoya's wife.  Irrespective of

-16-

Vigil's theory at trial, the Court believes that the jury was free to disregard Vigil's "hard bargaining" analysis and conclude that his actions were an attempt to extort from Everage some portion of the fees that he would have earned through his performance of the SLOM contract. Given the sufficient and, indeed, substantial, evidence presented at trial, and given that the United States is entitled to have all factual inferences drawn in its favor, Vigil's argument does not meet his burden of presenting a close question on appeal.

> **b.**     **The Court has Concluded that it is Legally and Factually Irrelevant Whether a Contract Existed Between Everage and the New Mexico State Treasurer's Office.**

Vigil contends that the United States was unable to prove that he wrongfully attempted to "obtain property" from Everage and cause him to provide it to another, with his consent. See Motion for Release at 4. Vigil premises his argument on his belief that Everage never acquired a property interest for Vigil to extort. See id.

Vigil repeats his previous arguments that, as a matter of state law, no enforceable contract existed between Everage and the NMSTO. See id. (citing N.M. Stat. Ann. § 37-1-23). Vigil asserts that, without a finalized contract, Everage had no entitlement to any monies or property -- and no such property existed -- that Vigil could have attempted to obtain for himself or to transfer to Samantha Sais. See id. Vigil argues that theoretical monies which may be made upon a contract that has not yet been finalized do not constitute "property." Id.

Vigil also emphasizes that the SLOM contract did not guarantee Everage any earnings, but rather provided for the SLOM to be compensated through receipt of a percentage of the commissions generated on securities-lending transactions. See id. at 5. Vigil argues that, under the facts of this case, no property interest could have manifested until the securities-lending agents agreed to contract

with the NMSTO and fee-generating trades were actually completed. <u>See</u> <u>id.</u> Vigil points out that,

during his testimony, Everage admitted that he lost no money, because the contract, even if finalized,

provided no money except for potential commissions. <u>See</u> <u>id.</u> <u>Cf.</u> Transcript of Cross-Examination

and Redirect-Examination of George Everage at 16:4-6 (taken September 18, 2006)(stating that he

never made any money that Vigil subsequently took away).

Vigil contends that, "[a]t most, Everage may have felt that he was promised something and

then did not receive it." Motion for Release at 5. Vigil contends that breach of promise or failed

contract negotiations do not violate the Hobbs Act. <u>See</u> <u>id.</u>

In repeating arguments that the Court previously rejected, Vigil does not attempt to address

the points that the Court made in its Impossibility Opinion, or that the United States raised during

the hearing on Vigil's rule 29 motions. Vigil does not address in his Motion for Release, and has

not previously addressed, federal appellate opinions more recent than the authority Vigil cites and

which the Court has found persuasive. <u>See</u> Impossibility Opinion at 42-43 (discussing <u>United States</u>

<u>v. Mitov</u>, 460 F.3d 901 (7th Cir. 2006)); Impossibility Opinion at 44-47 (discussing <u>United States</u>

<u>v. Gotti</u>, 459 F.3d 296 (2d Cir. 2006)). The inability of Vigil to mount any challenge to the sound

reasoning in <u>United States v. Mitov</u>, <u>United States v. Gotti</u>, or any of the other cases on which the

Court supported its conclusions -- or to point out flaws in the Court's application of those cases --

suggests that there are weaknesses in Vigil's position.

Vigil states that "he has a legitimate and reasonable disagreement with the Court's reasons

for denying his Motion to Set Aside Verdict." Mr. Vigil's Reply in Support of his Motion for

Release Pending Appeal at 3, filed February 13, 2007 (Doc. 449). Vigil does not, however, articulate

what those disagreements are or make any specific criticisms of the Court's reasoning in ruling on

-18-

his earlier motions.  Vigil has not indicated in what respects the Court's legal analysis is flawed or why the Tenth Circuit would not follow its sister Circuits' reasoning.  This avoidance of the authorities the Court cites, and Vigil's unwillingness to challenge the Court's application of those authorities, demonstrates to the Court that this argument does not raise a close question on appeal.

Related to his reluctance to address these persuasive authorities, Vigil does not address the applicability of intangible property rights such as the right to contract with parties of Everage's choosing, the right to make business decisions free from outside pressure, the right to decide with whom to work, and a reasonable belief in some form of success and profit.  The Court concluded in its Impossibility Opinion that a reasonable jury could have found beyond a reasonable doubt that Everage had a property interest under any of these theories, and that Vigil attempted to obtain that interest with the intent of exercising those rights, or transferring them to Sais, for his own benefit. See Impossibility Opinion at 47.  Vigil's property argument disregards the potential validity of these intangible property interests, and, instead,  continues to rest on the flawed legal premise that a finding of a contract is necessary to the existence of a property right in this case.  The Court must take Vigil's failure to address these other property interests as an implicit concession that, if the Court is accurate in its determination that these other property interests are valid, the Court's conclusion that Everage had a property interest that Vigil could have attempted to extort is correct. Because Vigil has not shown why the Tenth Circuit would not consider these other property interests and would focus only on the existence of a contract, Vigil has not convinced the Court that a close question exists on appeal.

The United States argues that, even if the Tenth Circuit does not consider these other intangible interests, Vigil's argument that a contract is necessary to create a reasonable expectation

of monetary payment is flawed.  See United States' Response at 8.  The United States contends that,

"[g]iven that [Vigil] attempted to force Everage to hire Sais so that Everage would have to pay Sais

a portion of his earnings, [Vigil] cannot credibly argue that he did not expect Everage to have future

earnings."  Id.  The United States notes that evidence was also presented at trial that someone at the

NMSTO sent Everage a contract for the SLOM position, that Everage signed the contract, that

Everage returned the contract to the NMSTO, and that someone from the NMSTO then sent work

for Everage to perform as the SLOM.  See id. at 8-9.  The United States suggests that a reasonable

jury could have concluded that, having received work from the NMSTO after signing and returning

the SLOM contract, Everage reasonably believed that he had been chosen as the SLOM.  See id.  The

United States concludes, because Everage relied on the actions and words of Vigil and his agents,

no contract was necessary for Everage to have a reasonable expectation of earnings on the SLOM.

See id.

        The United States' argument does not demonstrate why a valid contract was not necessary

to establish a tangible property interest, but rather suggests alternative grounds for the jury finding

the existence of one of the intangible interests the Court and the caselaw have previously mentioned

-- a reasonable belief in some form of success and profit.  The Court need not address the validity

of this argument, because Vigil was not convicted of extortion, but of attempted extortion; it is

irrelevant that no actual property was extorted: "[T]he offense of attempted extortion is complete

when the defendant has attempted to induce his victim to part with property."  United States v.

Foster, 443 F.3d 978, 985 (8th Cir. 2006).  As Vigil points out in his Substantial Step Motion, factual

impossibility is not a defense to an attempt charge.  See Substantial Step Motion at 5; United States

v. Mitov, 460 F.3d 901, 908 (7th Cir. 2006)(holding that factual impossibility is no defense to an

attempted extortion charge).  Even in the absence of an enforceable contract, a finding that an intangible property interest existed is not essential to the Tenth Circuit sustaining the Court's holding that Vigil's actions constituted a violation of the Hobbs Act.  Once a showing that Vigil attempted to induce Everage to part with property is made, the existence of that property becomes irrelevant to his conviction for attempted extortion.

In any case, a reasonable expectation of future earnings is not the only property interest at issue in this case.  In choosing not to address the multiple property interests at issue, Vigil does not address, to his peril, legal and factual conclusions that undermine his position.  The Court believes that the number of property interests relevant to this case -- all of which federal appellate courts have recognized as valid -- combined with the reality that his conviction was for an attempt crime, and his inability or refusal to discredit the Court's legal analysis support the Court's conclusion that no close question is presented.

> ### c.    The Ambiguous Jury Verdict Does Not Present a Close Issue on Appeal.

Vigil repeats his argument that, because no special interrogatories were submitted to the jury to determine whether it convicted him for extortion through fear of economic harm or under color of official right, the jury's verdict is ambiguous and a new trial must be granted.  See Motion for Release at 5.  Vigil contends that the United States failed to prove that Vigil committed the attempt by threat of economic harm.  See id.  Vigil maintains that, because the Court did not submit special interrogatories to the jury to determine under which theory they found Vigil guilty, there must be sufficient evidence for both theories or else the verdict is ambiguous, and the Court must grant a new trial.  See id. (citing United States v. Garcia, 907 F.2d 380, 381 (2d Cir. 1990)).

In support of his conclusion that the evidence is insufficient to find that Vigil extorted Everage by placing him in fear of economic harm, Vigil cites the United States Court of Appeals for the Second Circuit's decision in United States v. Garcia for the proposition that "when a 'victim' is a willing participant in order to materially benefit from some alleged extortion, the 'victim' is not acting out of fear, but rather out of a desire to improve its bottom line." Motion for Release at 5. Vigil contends that he did not threaten to take anything from Everage to which Everage was legally entitled. See id. Vigil argues that, in agreeing to submit Sais' name as part of his bid for the SLOM position, Everage did not act out of fear of economic harm, because he had no property to lose at that point; rather, he acted in an effort to obtain the SLOM contract and to capitalize on a money making opportunity. See id. at 6.

This argument is the same that Vigil raised in his Impossibility Motion. While the Court does not necessarily disagree with Vigil that the lack of special interrogatories to the jury makes the verdict ambiguous, the problem is that such a result does not make the verdict constitutionally infirm. In Griffin v. United States, 502 U.S. 46 (1991), the Supreme Court characterized it as well settled law that "a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds -- even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." Id. at 49. Moreover, as a matter of historical practice, this rule applied to "general verdicts returned on multicount indictments where some of the counts were unsupported by the evidence . . . [and to] a general jury verdict under a single count charging the commission of an offense by two or more means." Id. at 50 (internal citations omitted)(emphasis in original).

The Court notes that United States v. Garcia, although a persuasive appellate authority, is not

binding precedent for courts in the Tenth Circuit.  The Court also agrees with the United States that the Supreme Court's decision in <u>Griffin v. United States</u> casts doubt on the validity of the Second Circuit's essential holding in <u>United States v. Garcia</u>.  <u>See</u> United States' Response at 10.  Indeed, the Second Circuit itself has acknowledged that <u>Griffin v. United States</u> "effectively overruled" its decision in <u>United States v. Garcia</u>.  <u>United States v. Mulder</u>, 273 F.3d 91, 115 (2d Cir. 2001). Finally, Vigil has previously conceded that this argument lacks merit.  At the December 1, 2006 hearing on his rule 29 motions, Vigil's counsel acknowledged that the Supreme Court had overruled <u>United States v. Garcia</u> to the extent that the Second Circuit's result invalidated a general verdict even when the evidence was sufficient to support a conviction premised on either alternative ground. <u>See</u> Transcript of Hearing at 37:15-18 (Bowles)(taken December 1, 2006)("Hearing Transcript").

In addition, in its Impossibility Opinion, the Court acknowledged the possibility that <u>United States v. Garcia</u> is no longer good law, and still took considerable time to analyze the Second Circuit's essential holding in the case.  <u>See</u> Impossibility Opinion at 32-37.  The Court concluded that Vigil's case was distinguishable from <u>United States v. Garcia</u>, referenced more recent appellate cases that it found were more closely analogous to the facts of Vigil's case, <u>see</u> <u>United States v. Collins</u>, 78 F.3d 1021 (6th Cir. 1996), and concluded that, when the evidence was viewed in the light most favorable to the United States, a reasonable jury could have determined beyond a reasonable doubt that Vigil attempted to extort Everage by placing him in fear of economic harm.  Vigil has not made any argument that the Court's analysis of <u>United States v. Garcia</u> misunderstands the Second Circuit's result in that case, or criticized the Court's application of <u>United States v. Garcia</u> or any of the other authorities the Court relied on in making its findings.

Relying on <u>United States v. Garcia</u>, and without addressing contrary authority or the Court's

Impossibility Opinion, Vigil raises the exact same argument he previously raised, and the Court previously refuted. While the Court is not at all critical that Vigil repeats arguments, the Court does not think that Vigil will, at the Tenth Circuit, be able to safely ignore contrary Supreme Court precedent, the Second Circuit's acknowledgment that United States v. Garcia was "essentially overruled," his own concessions, or other fatal flaws. In any case, the Court does not believe that such a strategy meets Vigil's burden of proving the existence of a close question by a preponderance of the evidence.

> **d.    Vigil's Interstate Commerce Argument Does Not Present a Close or Substantial Issue.**

Vigil asserts that the United States did not prove, as the Hobbs Act requires, that Vigil's conduct affected interstate commerce. See Motion for Release at 6. Vigil argues that he, Everage, and Sais were all from New Mexico and that the Hobbs Act requires that the alleged act of extortion affect interstate commerce; he contends that, because the alleged act of extortion was an attempt to cause Everage, a New Mexican, to pay Sais, another New Mexican, there was no practical effect on interstate commerce. See Motion for Release at 6. Vigil maintains that the United States presented proof only that -- theoretically -- the SLOM position would have involved the oversight of brokerage firms that would lend securities for the State and that this lending would involve interstate commerce. See id. Vigil contends that, even if Everage agreed to provide theoretical money to Sais as part of the SLOM contract, that agreement would not impact the movement of goods and services in interstate commerce. See id.

The Court addressed and refuted this argument in its Impossibility Opinion. See Impossibility Opinion at 47-55. In re-raising this issue in his Motion for Release, Vigil has not made

any attempt to address the legal authorities the Court cited and that indicate that the interstate commerce element of the Hobbs Act cannot be given the narrow construction Vigil advances.  Nor has he dealt with the factual evidence suggesting that his attempted extortion may have actually affected interstate commerce.  Everage testified, for example, that, once he signed and returned the SLOM contract to the NMSTO, the NMSTO sent him the bid proposals of three securities-lending agents with multi-state and multi-national operations -- Dresdner Bank, Wachovia Bank, and Northern Bank -- for him to review the agents' applications for the securities-lending agent position.  See Transcript of Direct Testimony of George Everage at 93:13-22 (taken September 15, 2006)("Everage Direct Examination").  Everage evaluated these agents' applications and prepared a report making recommendations to the NMSTO.  See Securities Lending Evaluation Prepared by SECSYS, LLC (Government's Exhibit 524).  Everage testified that, had a securities-lending contract been executed, there certainly would have been transmission of securities and money across state lines, and companies outside of New Mexico would have been affected.  See Everage Direct Examination at 140:3-10.

More important, because Vigil was convicted of an attempt crime, it is irrelevant whether interstate commerce was actually affected; "where there is no actual effect, the government need prove only 'a realistic probability of an effect . . . on interstate commerce to bring [the extortion]' within prosecutorial reach."  United States v. Mitov, 460 F.3d at 908 (quoting United States v. Peterson, 236 F.3d 848, 852 (7th Cir. 2001)).  The United States satisfies its burden by demonstrating a potential effect on interstate commerce.  See United States v. Toles, 297 F.3d 959, 969 (10th Cir. 2002); United States v. Wiseman, 172 F.3d 1196, 1216 (10th Cir. 1999).

Again, Vigil argues the merits of the interstate commerce issue, on grounds the Court has

-25-

already refuted, without making any discussion of why the Court's analysis is flawed or how the question could have been resolved in Vigil's favor.  Vigil continues to avoid legal authorities contrary to his position and factual evidence in the record that undermines his argument.  The Court has carefully reviewed each of Vigil's arguments related to his offense's affect on interstate commerce, and believes the law and the record refute them.  Without more from Vigil, it does not believe that this issue raises a close issue on appeal.

          **e.**        **Vigil's Due Process Argument Does Not Present a Close or Substantial Issue.**

Finally, Vigil argues that his conviction offends due process because the Hobbs Act does not provide notice that his actions were illegal.  <u>See</u> Motion for Release at 6.  Vigil maintains that "[m]odification of a contract proposal to require a bidder to split the contract[,] thereby lowering his potential compensation[,] is not something the average citizen would understand to be a crime."  <u>Id.</u>

Vigil's argument relies on his characterization of his activities as mere "hard bargaining," or as merely an attempt to secure a job for Sais.  The Court does not find Vigil's characterization of his activities persuasive, however, and believes that a reasonable jury could have found that Vigil was not merely altering contract terms, but attempting to direct payments, to which he was not entitled, to Sais.  The Hobbs Act expressly prohibits attempts to extort payments by wrongful use of threatened fear or under color of official right.  <u>See</u> 18 U.S.C. § 1951(a), (b)(2).  Vigil should have reasonably known that the Hobbs Act makes it a crime to condition receiving a state contract on an agreement to pay kickbacks to a designee.

Moreover, the Court believes  it has set forth in its Impossibility Opinion why this argument does not present a close question on appeal.  <u>See</u> Impossibility Opinion at 55-58.  Vigil does not

address the authorities the Court cited in its opinion or make assertions that its legal analysis was incorrect.  Vigil reasserts the merits of his argument, but he has not demonstrated to the Court that whether his conviction offends due process is a close question of law that could be decided the other way.

In summary, there is sufficient evidence for a reasonable jury to conclude that Vigil's conduct constituted a violation of the Hobbs Act.  The Court has taken great care to consider all of Vigil's arguments and each of the authorities he cites in support of his conclusions.  Vigil, for his part, has been unable or unwilling to address the authorities on which the Court has relied or to point out errors in the Court's application of the law and the facts.  Consequently, Vigil has not satisfied his burden to establish by a preponderance of the evidence that the issues raised in his Impossibility Motion are close questions of law or ones that very well could be decided the other way.

### 2.    Substantial Step Motion.

Vigil asserts that, for the United States to prove that Vigil attempted to extort Everage, it must have proven beyond a reasonable doubt that: (i) Vigil intended to commit the crime; and (ii) Vigil took a substantial step towards commission of that crime.  See Motion for Release at 7.  Vigil describes a "substantial step" as something beyond mere preparation, and states that it must be an act "adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime."  Id. (quoting United States v. Monholland, 607 F.2d 1311, 1318 (10th Cir. 1979)).  Vigil summarizes that a conviction for an attempt requires a showing of more than the defendant's intent to commit the crime, and that the United States must prove an overt act pointed directly to the commission of the crime charged.  See Motion for Release at 7 (citing United States v. Monholland, 607 F.2d at 1320).

-27-

Vigil argues that he is not guilty of attempted extortion because he did not take a substantial step or an overt act toward commission of the crime.  Vigil  asserts that, at most, his actions were "mere preparation."  Motion for Release at 7.  Vigil's substantial step argument incorporates many of the elements he previously asserted in his Impossibility Motion.  Again, Vigil maintains that he and Everage were "simply in contract negotiations" regarding Sais, and the contract never came to fruition.  Id.  Vigil argues that, as a matter of state law, no enforceable contract ever existed between Everage and the NMSTO.  See id.  Vigil argues that the only substantial step that he could have taken to lead to the commission of the crime of extortion is to have signed an enforceable contract. See id. at 7-8.

Vigil's argument regarding what actions would constitute a substantial step has been inconsistent throughout the proceedings.  In his Substantial Step Motion, Vigil took a position consistent with the one he asserts now, and argued that "[t]he only overt act [he] could have taken that would have resulted in the commission of a Hobbs Act violation would be to sign the contract." Substantial Step Motion at 6 (emphasis in original).  He also stated, however, that "even if [he] had signed the contract, the substantial step requirement would still not be met."  Id. at 7.  In his Reply to the United States' Response to the Substantial Step Motion, however, Vigil appeared to argue that a valid contract would not be sufficient to sustain his conviction, because additional events would need to occur for fee-generating securities-lending transactions to occur and monies distributed to Sais.  See Reply to United States' Response to Motion to Set Aside Verdict and for Judgment of Acquittal on Count 24 of the Fifth Superseding Indictment Under Fed. R. Crim. P. 29 as the Evidence is Insufficient to Sustain a Conviction at 7, filed November 13, 2006 (Doc. 421).  Finally, at the hearing on his rule 29 motions, Vigil's counsel asserted that, even if a valid contract had been

signed, it would not be sufficient to constitute a substantial step. See Hearing Transcript at 26:16-27:2 (Bowles).

In any case, Vigil asserts that he did not take a substantial step toward the commission of his crime and, therefore, insufficient evidence exists to support his conviction. Again, Vigil has repeatedly asserted this argument, and the Court has repeatedly rejected it. In its previous briefings and arguments, the United States has set forth the multiple substantial steps that Vigil took toward the commission of his crime. While the Court has not necessarily agreed with the United States that all of those actions would constitute a substantial step if taken individually, the Court has said that each of those steps corroborates Vigil's intent to extort Everage, and that, taken in the aggregate, the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Vigil took a substantial step toward the completion of the crime of extortion.

The applicable case law from the Tenth Circuit does not require a defendant to go as far as Vigil maintains he had to go to commit the crime of attempted extortion. In its Substantial Step Opinion, the Court referenced a number of Tenth Circuit cases more recent than United States v. Monholland -- a number of which make use of the legal language that Vigil proffers -- in support of its conclusion that Vigil took a substantial step towards the commission of the crime as a matter of law. In his Motion for Release, Vigil does not attempt to distinguish those more contemporary cases or proffer any explanation why he believes the Court's application of those cases to the facts of his case was incorrect.

The Court has already addressed the merits of Vigil's substantial step argument in its Substantial Step opinion, and continues to believes that a reasonable jury could have concluded that Vigil came dangerously close to successfully extorting Everage. Indeed, the Court has already found

that a reasonable jury could have determined that the property interest Vigil attempted to extort was Everage's right to make business decisions free from coercion and to contract with parties of his own choosing; under these theories, a reasonable jury might have concluded that Vigil actually succeeded in extorting Everage.  In any case, the evidence of Vigil's actions was sufficient to establish that he came dangerously close to succeeding in extorting Everage.  If Everage had gone along with Vigil's wishes, there is nothing but Vigil's speculation to suggest that the extortion would have not been completed.  Based on the trial evidence, a reasonable jury could have concluded that, had Everage acted with complicity, the extortion attempt would have succeeded.

Accordingly, Vigil's substantial step argument does not present a close or substantial issue for appeal.  Given the evidence, and given that the Tenth Circuit will draw all factual inferences in favor of the United States on appeal, Vigil's sufficiency of the evidence argument, like his other arguments, does not present a close question.  In sum, both of Vigil's rule 29 motions, and the appellate issues that they contain, do not raise substantial issues.

Vigil has misunderstood his burden at this stage in the proceedings.  Pursuant to the language of 18 U.S.C. § 3143(b)(1)(B) and the Tenth Circuit's opinion in United States v. Affleck, it is not enough for Vigil to merely enumerate legal issues upon which the Court ruled against him.  At this point, Vigil must demonstrate to the Court why the questions he raised are close questions of law or fact and prove by a preponderance of the evidence that those questions very well could have been decided the other way.  Vigil has not made any showing to that effect.  In conclusion, while Vigil is not likely to flee or to pose a danger to the safety of any other person or to the community, and his appeal is not for the purpose of delay, because Vigil's appeal does not raise a substantial question of law or fact likely to result in reversal or an order for a new trial, the Court will deny his motion

-30-

and detain him pending his appeal.[3]

      **IT IS ORDERED** that the Defendant's Motion for Release Pending Appeal is denied.

                                        _____

                                        UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
Jonathon M. Gerson
Steven C. Yarbrough
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

-- and --

Sam Bregman
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

      *Attorneys for the Defendant*

_____

   [3]The Court's ultimate conclusion finds additional support in the fact that not one, but two, federal judges have considered at least some of the issues that Vigil raises in his Motion for Release. Vigil's first trial was before the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico.  While Judge Parker did not have the same opportunity to consider these issues in the detail that the Court has had, in submitting the case to the jury at the close of the United States' evidence in the first trial, his actions suggest he was inclined to agree that there were not legal issues that precluded a jury verdict on Count Twenty-Four.  Although Judge Parker's submission of Count Twenty-Four to the jury in Vigil's first trial or similar evidence is not dispositive, it gives the Court additional confidence in its conclusion that Vigil's motions do not raise close questions or ones that very well could be decided the other way.