IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                              No. CR 05-2051 JB

ROBERT VIGIL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion Requesting Clarification of Sentencing Order, filed September 21, 2009 (Doc. 516). The Court held a hearing on January 20, 2010. The primary issues raised by the motion are: (i) whether the Court has jurisdiction to correct the Bureau of Prisons' selected start date for calculating Defendant Robert Vigil's term of imprisonment; (ii) whether the BOP improperly calculated Vigil's prison term to begin on January 24, 2007, when he was placed on house arrest, rather than on April 9, 2007, when he was placed in a federal correctional facility; and (iii) whether any excess prison time resulting from the use of the wrong start date should be credited to Vigil's term of supervised release. Because 28 U.S.C. § 2241 provides a mechanism to challenge, before a district court, the BOP's calculation of a sentence, the Court finds it has jurisdiction in this case. On the other hand, because Vigil has already been released from custody and clearly established Supreme Court precedent dictates that excess prison time cannot be credit towards a released prisoner's term of supervised release, the Court finds that Vigil's motion is moot. The Court thus denies the remainder of Vigil's motion as moot.

**PROCEDURAL BACKGROUND**

Vigil was released on certain conditions pending trial. His conditions first included limiting travel to within the State of New Mexico and reporting to Pre-Trial/Probation officers as directed. See Modification to Order Setting Conditions to Release at 1, filed September 19, 2005 (Doc. 10). The Honorable James A. Parker, Senior United States District Judge, modified those conditions to include Vigil's relinquishment of his authority over matters as the New Mexico State Treasurer. See Order Modifying the Order Setting Conditions of Release ¶ 1, at 1, filed October 17, 2005 (Doc. 24).

On September 30, 2006, a jury found Vigil guilty of one count out of a twenty-four-count indictment: violation of the Hobbs Act, 18 U.S.C. §§ 1951 & 2. See Fifth Superseding Indictment at 30-31, filed July 25, 2006 (Doc. 259); Verdict at 5, filed September 30, 2006 (Doc. 408). On January 24, 2007, the Court held a sentencing hearing, after which the Court sentenced Vigil to a term of 37-months imprisonment, 3 years of supervised release, and a fine of $97,248.42. See Judgment in Criminal Case at 2, 4, 6, filed February 22, 2007 (Doc. 456)("Judgment"). At the sentencing, the Court allowed Vigil to self-surrender to the BOP facility, but imposed the additional restriction of being electronically monitored via an electronic ankle bracelet. See Transcript of Hearing at 221:17-224:18 (taken January 23, 2007)(Court, Bowles, Gerson). On January 26, 2007, the Court by written order modified Vigil's conditions of release pending voluntary surrender to place Vigil on the Home Confinement Program, requiring home detention and electronic monitoring. See Order Modifying Conditions of Release, filed January 26, 2007 (Doc. 446). The Order stated:

1)   The defendant shall be required to participate on the Home Confinement Program under the Home Detention component and abide by all schedules approved by the probation officer. The defendant shall abide by all rules of that program and pay any associated costs as directed by the probation officer.

2)   All other conditions of release shall remain in full force.

Id. at 1.[1]

Both parties appealed aspects of the Court's final judgment, see Notice of Defendant Robert Vigil's Appeal, filed February 27, 2007 (Doc. 457), but Plaintiff United States of America did not pursue its appeal. Vigil filed a motion for release pending appeal. The Court denied the motion. See Memorandum Opinion and Order at 31, filed February 16, 2007 (Doc. 454). According to the United States Marshal's Service, Vigil self-surrendered on April 3, 2007.[2] The United States Court of Appeals for the Tenth Circuit affirmed the judgment on all issues it reached. See United States v. Vigil, No. 07-2060, Judgment at 1 (filed in 10th Cir. Apr. 29, 2008), filed May 22, 2008 (Doc. 513-2). The Supreme Court of the United States denied certiorari on October 6, 2008. See Letter from Elisabeth Shumaker to Judges Paul J. Kelly, Jr., Stephen H. Anderson, and Michael R. Murphy (dated October 10, 2008), filed October 10, 2008 (Doc. 515).

---

[1] As described by the Federal Judiciary website,

> In the federal courts, home confinement is not a sentence in and of itself but may be a condition of either probation, parole, supervised release, or pretrial release. A person placed under home confinement is confined to his or her residence, usually linked to an electronic monitoring system, and required to maintain a strict daily activity schedule. When the person is allowed to leave home, and for what reasons, is determined case by case.
>
> * * * *
>
> With home detention, the participant remains at home at all times except for pre-approved and scheduled absences, such as for work, school, treatment, church, attorney appointments, court appearances, and other court-ordered obligations.

USCourts.gov, Home Confinement, http://www.uscourts.gov/fedprob/supervise/home.html (last visited May 4, 2010)(emphasis in original).

[2] According to Vigil and the National Inmate Appeals Administrator, Vigil's sentence officially began on April 9, 2007. See Motion ¶ 4, at 2; Motion Exhibit 1. Because Vigil does not ask, alternatively, that the Court begin his term of incarceration on April 3, 2007, the Court need not determine the reason or effect of the apparent discrepancy.

In calculating Vigil's release date, the BOP began his 37-month sentence on April 9, 2007, rather than on January 24, 2007, the date of his sentencing hearing whereat the Court orally placed him on home detention and electronic monitoring. Vigil pursued the BOP's administrative process for having the calculation of his sentence corrected. See Motion ¶ 3, at 1. He attached to his motion a portion of the letter he received from the Administrator of Inmate Appeals, which states, in relevant part:

> You appeal the Regional Director's response to your Administrative Remedy, in which you claim you should receive credit toward your federal sentence for the time spent on home confinement from January 24, 2007, through April 8, 2007. You claim this credit was originally applied to your computation, but was then removed.
>
> * * * *
>
> Your sentence has been computed in accordance with applicable statute and Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984). Your appeal is denied.

Motion Exhibit 1. Vigil now asks the Court to resolve this same issue, as well as two others.

On September 21, 2009, Vigil moved for clarification of the Court's judgment of conviction on two issues: (i) whether the Court intended that his sentence of imprisonment be calculated from a starting date of January 24, 2007, when he was placed on house arrest, or April 9, 2007, when Vigil was placed in a federal correctional facility, see Motion ¶¶ 4-7, at 2; and (ii) whether the Court intended for Vigil to pay a fine of $97,248.42 or to pay a fine of $25,000.00 plus $1,952.66 for each month he was held in prison, see Motion ¶¶ 8-11, at 2-3. See Transcript of Hearing at 8:22:12:8 (taken January 20, 2010)(Court, Bregman)("Tr.").[3] On October 5, 2009, the United States filed its response in opposition to this motion. See Memorandum in Opposition to Defendant's Motion

---

[3] The citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may have slightly different page and/or line numbers.

Requesting Clarification of Sentencing, filed October 5, 2009 (Doc. 517). The United States argued that the Court lost jurisdiction over the case and that the BOP had properly calculated Vigil's term of imprisonment. See id. at 1-2.

On December 11, 2009, Vigil was released from the BOP's custody and began his term of supervised release.[4] At the January 20, 2010 hearing, Vigil asked this Court to address, in addition to the issues briefed, whether the Court intended to require Vigil to pay interest on the fine that it imposed in its February 22, 2007 judgment. See Tr. at 8:22:12:8 (Court, Bregman). Jonathan Gerson, Assistant United States Attorney, argued that the Court did not have jurisdiction over this issue because the Court lost jurisdiction when Vigil appealed the Court's judgment. See Tr. at 12:12-13:7 (Gerson). Mr. Gerson insisted that Vigil's motion was one to modify or correct the sentence, rather than to merely clarify what the sentence was intended to do. See id. at 16:14-17:2 (Court, Gerson).

The Court has already addressed the latter two of the above issues in separate opinions, because Vigil stated that the issues relating to the fine the Court imposed on Vigil were more time-sensitive. In those opinions, the Court found that it had jurisdiction to clarify whether Vigil must pay interest on the Court's fine, but found that the Court did not have jurisdiction to "clarify" that a Judgment, which explicitly stated a fine of $97,248.42, was intended to reflect a fine of $25,000.00 plus $1,952.66 for each day of incarceration. See United States v. Vigil, No. CR 05-2051 JB, 2010 WL 552375, at *7 (D.N.M. Feb. 3, 2010)(Browning, J.); United States v. Vigil, No. CR 05-2051 JB, 2010 WL 552605, at *6 (D.N.M. Feb. 3, 2010) (Browning, J.). The Court now addresses the final issues that these motions raise: (i) whether the Court has jurisdiction to entertain

---

[4] The Court found this date through the Federal Bureau of Prisons' Inmate Locator, available at http://www.bop.gov/iloc2/LocateInmate.jsp (last visited May 3, 2010).

the motion; (ii) whether the BOP selected the proper start date for calculating Vigil's term of imprisonment; and (iii) whether the Court should apply any excess prison time served to Vigil's term of supervised release. While the Court finds that it has jurisdiction to entertain the motion, the Court concludes that the issue raised by Vigil is moot and therefore denies the motion.

## **RELEVANT LAW ON CORRECTION AND CLARIFICATION OF SENTENCES**

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." United States v. Mendoza, 118 F.3d 707, 709 (10th Cir. 1997). As the Tenth Circuit explains:

> A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so. Section 3582(c) of Title 18 of the United States Code provides three avenues through which the court may "modify a term of imprisonment once it has been imposed." A court may modify a sentence: (1) in certain circumstances "upon motion of the Director of the Bureau of Prisons"; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; or (3) "upon motion of the defendant or the Director of the Bureau of Prisons," or on the court's own motion in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission."

United States v. Blackwell, 81 F.3d 945, 947-48 (10th Cir. 1996) (citations and footnote omitted).[5]

Rule 35 of the Federal Rules of Criminal Procedure authorizes the district court to reduce or correct a sentence in certain situations. See Fed. R. Crim. P. 35. Under rule 35(a), "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."[6] Under subsection (b), a court may reduce a sentence for substantial assistance

---

[5] Congress twice amended 18 U.S.C. § 3582, in 1996 and 2004, since the Tenth Circuit's decision in United States v. Blackwell; however, neither of these amendment substantively affects the Tenth Circuit's analysis.

[6] The period of time in which a court could correct these "clear" errors was extended from seven days to fourteen days by amendments that took effect on December 1, 2009. The Court does not need to determine whether the prior seven-day period or the new fourteen-day period applies to

in certain situations "[u]pon the government's motion." Id. at 35(b)(emphasis added). Moreover, rule 36 allows a court to, at any time, "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Id. at 36.

In United States v. Blackwell, the Tenth Circuit reversed the district court's re-sentencing of a co-defendant seventy-two days after the original sentencing. See 81 F.3d at 946. In that case, the defendant, who received an initial sentence of 15 months imprisonment, moved the court for a re-sentencing because, "three days prior to his sentencing, Defendant's supplier pleaded guilty to distributing fifty-five ounces of cocaine and the United States District Court for the District of Utah sentenced her to probation." Id. The court held a re-sentencing hearing seventy-two days after the original sentencing, and, at that hearing, reduced the defendant's sentence to "three-years probation, with six-months home detention." Id. at 947. In explaining its authority to modify the defendant's sentence, the district court relied on "two alternative sources of authority . . . :(1) the court's 'inherent jurisdiction' to right injustices, and (2) Fed. R. Crim. P. 35[.]" 81 F.3d at 947.

The Tenth Circuit rejected the district court's reliance on rule 35, rule 36, or its "inherent authority," and concluded that "the court lacked jurisdiction to resentence Defendant." United States v. Blackwell, 81 F.3d at 949. The Tenth Circuit first held that the only option under § 3582 applicable to that case was whether rule 35 granted the court authority to modify the defendant's sentence. See 81 F.3d at 948. Rule 35(a) did not apply, "because the court did not correct Defendant's sentence within seven days after the original sentence was imposed, but resentenced Defendant seventy-two days later." 81 F.3d at 948 (discussing then rule 35(c)). The Tenth Circuit also held that rule 35(b) did not apply: "Because subsection (b) applies only to motions made by the

---

Vigil's case because it is now over 1,000 days since the Court entered judgment sentencing Vigil.

government, a defendant cannot invoke Rule 35(b) and empower the court to reduce his sentence." 81 F.3d at 948.

### LAW REGARDING CHALLENGING THE BOP'S CALCULATION OF SENTENCE

"By statute, responsibility for the computation of the service of a sentence is an administrative responsibility conferred upon the attorney general acting through the Bureau of Prisons." Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986). Sometimes an inmate has no legitimate complaint about his or her conviction or sentence, but nevertheless believes that the BOP is improperly administering the sentence the trial court imposed. The most common instance of this scenario is where the defendant believes the BOP has somehow calculated his or her sentence incorrectly. The proper device for such a challenge is to bring a petition for habeas corpus under 28 U.S.C. § 2241. See United States v. Storm, 281 Fed. Appx. 830, 832 (10th Cir. 2008)("[Storm's] claim . . . is not that his conviction and sentence were improper, which would fall within 28 U.S.C. § 2255, but that his sentence, as he understands it, is being improperly executed by the Bureau of Prisons. This falls squarely within § 2241."); Davis v. Roberts, 425 F.3d 830, 833 (10th Cir. 2005)("[A] challenge to the execution of a sentence should be brought under 28 U.S.C. § 2241."); Romandine v. United States, 206 F.3d 731, 736 (7th Cir. 2000)("Requests for sentence credit, or for recalculation of time yet to serve[,] . . . must be presented to the Attorney General (or her delegate, the Bureau of Prisons), and adverse decisions may be reviewed by an action under 28 U.S.C. § 2241."); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996)("A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity . . . ."). Before bringing a petition under § 2241, however, an inmate must first exhaust all administrative remedies from which he or she might find relief, unless he or she can demonstrate that such exhaustion would be futile. See Garza v. Davis, 596 F.3d 1198, 1204 (10th Cir. 2010)("Mr. Garza concedes that he did not exhaust the

administrative remedies provided by BOP.  Accordingly, unless he can demonstrate that attempting to do so would be futile, Mr. Garza cannot proceed with his § 2241 petition."); Fazzini v. Ne. Ohio Corr. Ctr., 473 F.3d 229, 233 (6th Cir. 2006); Buchanan v. U.S. Bureau of Prisons, 133 Fed. Appx. 465, 467 (10th Cir. 2005)("Petitioner must exhaust the available administrative remedies prior to pursuing relief under § 2241."); Loewe v. Conner, 125 Fed. Appx. 942, 943 (10th Cir. 2005)("Prior to seeking habeas relief under § 2241, federal prisoners must exhaust administrative remedies."); Williams v. O'Brien, 792 F.2d at 987 ("Appellant admitted that he commenced this action without complying with [the administrative] procedure. He has no alternative but to comply.").

## RELEVANT LAW REGARDING SUPERVISED RELEASE

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a).  When a defendant is on supervised release, he is legally bound to abide by certain conditions of his release.  See 18 U.S.C. § 3583(d).  A court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release . . . without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

18 U.S.C. § 3583.  In other words, there is a period of time after release during which, if the defendant does not behave properly, his term of imprisonment may be extended.

The conditions of supervised release are specified in 18 U.S.C. § 3583.  The terms in § 3583 include that the defendant not commit another Federal, State, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant

cooperate in the collection of a DNA sample, among others. See 18 U.S.C. § 3583(d). Among those conditions not listed in § 3583 is that supervised release may be revoked if the defendant fails to pay a fine or restitution that the court has imposed. See 18 U.S.C. 3613A ("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").

A court may clarify for the defendant what the terms of his or her supervised release entail. Generally, the district court has a duty to ensure, to the best of its ability, that the defendant complies with the terms of his or her supervised release. See United States v. Guanipa, 322 Fed. Appx. 831, 832 (11th Cir. 2009)("[U]nder 18 U.S.C. § 3583, district courts retain the ultimate responsibility for ensuring that a defendant has complied with the conditions of her supervised release."). The Advisory Committee to the Federal Rules of Criminal Procedure has stated: "The probationer [and, presumably,[7] the defendant on supervised release] should have the right to apply to the sentencing court for a clarification or change of conditions." Fed. R. Crim P. 32.1(b), advisory committee note (citing American Bar Association, Standards Relating to Probation § 3.1(c) (Approved Draft,

---

[7] The Court presumes that this advisory committee note would apply equally to defendants on supervised release as to those on probation. The advisory committee note was drafted in 1979, when the rule was first enacted. The rule, as initially passed, did not include the phrase "supervised release." Rather, reference to "supervised release" was added in the amendments of 1989. The primary statutes dealing with supervised release were not adopted until 1984. See 18 U.S.C. § 3583; 18 U.S.C. § 3624. The committee thus had no cause to mention supervised release when drafting the 1979 advisory committee notes. Furthermore, the current rule 32.1 treats supervised release and probation equally -- every time the rule mentions "supervised release" it is in the context of the phrase "probation or supervised release." The notes on the 1989 amendments state only that "[t]he amendments recognize that convicted defendants may be on supervised release as well as on probation." Federal Criminal Code and Rules at 156 (West 2010). The Court believes that Congress and the advisory committee would intend that courts treat supervised release and probation the same with respect to the application of rule 32.1 and when a defendant can seek clarification. See United States v. Padilla, 415 F.3d 211, 222-23 (1st Cir. 2005)(stating, in dicta, that the advisory committee note applies to motions for clarification of terms of supervised release); United States v. Monteiro, 270 F.3d at 472 (citing the same advisory committee note).

1970)); United States v. Raymer, 148 Fed. Appx. 555, 557 (7th Cir. 2005)("Raymer . . . sought clarification of the conditions of supervised release, which is a legitimate basis for a motion."). Federal Rule of Criminal Procedure 32.1 "permits a defendant to move for 'clarification of a term or condition of supervised release so that the defendant may have an opportunity to comply with the court's order without first having to violate it.'"  United States v. Raymer, 148 Fed. Appx. at 557 (quoting United States v. Lilly, 206 F.3d 756, 762 (7th Cir. 2000)).

## HOUSE ARREST AS AN OFFSET TO A PRISON SENTENCE

The calculation of a prison term is governed by 18 U.S.C. § 3585. It states

> **(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> **(b) Credit for prior custody.**--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . .

18 U.S.C. § 3585.[8]  The question sometimes arises whether house arrest is a form of "time spent in official detention," such that it should be credited against a term of imprisonment. Although the Court was unable to find a Tenth Circuit case deciding the issue, case law from other jurisdictions uniformly answers this question, "no."

The Supreme Court of the United States has held, in similar circumstances, that pre-trial "release" which involves some level of confinement is not "official detention," as 18 U.S.C. § 3585 defines that phrase.  In Reno v. Koray, 515 U.S. 50 (1995), a defendant filed a habeas petition asking to have credited to his prison term a period of time in which he was released on bond, but ordered

---

[8] The Court has found nowhere in Chapter 227 of Title 18, wherein one finds 18 U.S.C. § 3585, where Congress defined the term "official detention."

confined to a community treatment center. See 515 U.S. at 52. The terms of his confinement were that he must stay at the treatment center "without 'authoriz[ation] to leave for any reason unless accompanied' by a Government special agent." Id. at 53. The Supreme Court held that this condition was not "official detention," because "the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., is the body of law that authorizes federal courts to place presentence restraints on a defendant's liberty, [and] the 'official detention' language of § 3585(b) must be construed in conjunction with that Act." 515 U.S. at 56. The Supreme Court concluded that, "under the language of the Bail Reform Act of 1984, a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, as respondent was, is 'released.'" 515 U.S. at 56.[9]

The Supreme Court's rationale in Reno v. Koray seems equally applicable to a defendant released to house arrest, and several courts of appeals have reached this same conclusion. The United States Court of Appeals for the Eleventh Circuit did so in Rodriguez v. Lamer, 60 F.3d 745, 747-48 (1995), when it found that time "spent under restrictive pre-trial release conditions does not constitute 'official detention' within the meaning of 18 U.S.C. § 3585(b) and [thus the defendant] is not entitled to sentencing credit." Rodriguez v. Lamer, 60 F.3d at 748 (discussing whether "the correct interpretation of 'official detention' under 18 U.S.C. § 3585(b) includes time spent under 'house arrest.'"). In United States v. Gordon, 130 Fed. Appx. 24 (7th Cir. 2005), the United States Court of Appeals for the Seventh Circuit held similarly. In that case, Gordon argued that he should

---

[9] The Supreme Court also quoted at length from the Bureau of Prisons Program Statement No. 5880.28(c) (July 29, 1994), which explains how the Bureau of Prisons understands 18 U.S.C. § 3585(b) and stated: "A condition of bail or bond which is 'highly restrictive,' and that includes 'house arrest', 'electronic monitoring' or 'home confinement'; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention." Reno v. Koray, 515 U.S. at 60 n.4 (emphasis added).

be given credit toward his sentence for 308 days that he spent on house arrest before serving his sentence, "arguing that it constituted 'official detention' under [18 U.S.C. § 3585]." 130 Fed. Appx. at 24-25. The Seventh Circuit affirmed the district court's denial of Gordon's requested recalculation, finding that Reno v. Koray had held "that a defendant who is properly admitted to bail is not in 'detention' within the meaning of § 3585(b), no matter how restrictive the conditions." 130 Fed. Appx. at 25. The United States Court of Appeals for the Ninth Circuit found the same in Logan v. Benov, 202 F.3d 278 (Table), 1999 WL 1054666 (9th Cir. 1999), when it held that, while the defendant was on house arrest and was hospitalized, he "was not under the control of the Bureau of Prisons or Attorney General," and therefore was not under "official detention" for the purposes of 18 U.S.C. § 3585. 1999 WL 1054666, at *1. See United States v. Carpenter, 320 F.3d 334, 344 (2d Cir. 2003)(stating the parties' understanding that Reno v. Koray adopted "the BOP's interpretation of 18 U.S.C. § 3585(b) under which '[a] condition of bail or bond which . . . includes "house arrest" . . . is not [credited] as time in official detention,' because '[s]uch a defendant is not subject to the discretion of the U.S. Attorney General.'"); United States v. Iversen, 90 F.3d 1340, 1344-45 (8th Cir. 1996)("We find . . . that the district court did not have the authority under 18 U.S.C. § 3585(b) to credit Iversen for the time spent in home detention for the prior sentence[.]").

Even before the Supreme Court's decision in Reno v. Koray, the Ninth Circuit had found that time spent under house arrest was not time spent in official detention under 18 U.S.C. § 3585. In Fraley v. U.S. Bureau of Prisons, 1 F.3d 924 (9th Cir. 1993), the Ninth Circuit held that time spent on house arrest would not be credited toward prison term because "the conditions governing [the defendant's] release did not 'approach those of incarceration.'" 1 F.3d 924, 925-26. The United States Court of Appeals for the Third Circuit agreed in Edwards v. United States, 41 F.3d 154 (1994). In Edwards v. United States, Edwards was "confined to his uncle's home under electronic

-13-

monitoring and could not leave without permission of Pretrial Services. He was granted a number of "black out periods" to leave his uncle's apartment and attend church, church choir practice, attorney and court appointments." 41 F.3d at 155. Edwards sought "sentence credit for the nine to ten months he spent in home confinement, which the district court denied." Id.[10] Edwards argued that "his home confinement was so restrictive that it approached jail-type confinement, and that the Bureau of Prisons abused its discretion in finding that his confinement was not 'official detention' under § 3585(b)." Edwards v. United States, 41 F.3d at 156. The Third Circuit affirmed the district court's denial, finding that "the terms of his home confinement were just not sufficiently onerous to approach jail-type incarceration, and, therefore, did not constitute official detention within the meaning of § 3585." 41 F.3d at 156. In United States v. Wickman, 955 F.2d 592 (8th Cir. 1992)(en banc)(per curiam), the United States Court of Appeals for the Eighth Circuit took the same road. Addressing the issue "whether Wickman's period of house arrest was 'time he has spent in official detention' for which he 'shall be given credit' under 18 U.S.C. § 3585(b)," 955 F.2d at 593, the Eighth Circuit "concluded that the house arrest restrictions that were placed upon Wickman as conditions of his pre-trial release did not constitute 'official detention' within the meaning of § 3585(b)," id.

Some Tenth Circuit cases imply that pre-trial release on the condition of house arrest is not "official detention" under 18 U.S.C. § 3585. In United States v. Lopez, 132 F.3d 42 (Table), 1997 WL 787175 (10th Cir. Dec. 23, 1997), the Tenth Circuit addressed Lopez' argument that it should given him credit toward his sentence for time spent on pre-trial release with certain unspecified

---

[10] Initially Edwards sought this remedy at sentencing, which request was denied, but he re-raised the issue through the administrative process and then by proper motion to a federal district court. See Edwards v. United States, 41 F.3d at 155. The district court denied this second request as well, on recommendation from the Magistrate Judge to which the issue was referred. See id.

conditions. See 1997 WL 787175, at *1. The Tenth Circuit cited as one basis for denying his request that "[Lopez] was not confined in a 'correctional facility designated by the Bureau [of Prisons] for the service of federal sentences' while on release, and was therefore not under 'official detention' within the meaning of § 3585." 1997 WL 787175, at *1 (quoting Reno v. Koray, 515 U.S. at 58). In McAlpine v. Kindt, 77 F.3d 492 (Table), 1996 WL 71506 (10th Cir. Feb. 20, 1996), the Tenth Circuit addressed McAlpine's argument that he was entitled to sentence credit for time spent "'confined' to an Indian Reservation." 1996 WL 71506, at *1. The Tenth Circuit panel affirmed the district court's denial of McAlpine's habeas petition, and characterized the Supreme Court's decision in Reno v. Koray – upon which the district court relied -- as holding that "time spent while released on bail, no matter how restrictive the conditions, is not 'official detention' within the meaning of 18 U.S.C. § 3585(b)." 1996 WL 71506, at *1. Most relevant, however, appears to be the Tenth Circuit's opinion in United States v. Woods, 888 F.2d 653 (10th Cir. 1989), wherein the Tenth Circuit stated:

> For the purpose of calculating credit for time served under 18 U.S.C. § 3585, "official detention" means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration. See [United States v.] Robles, 563 F.2d [1308] 1309 [(9th Cir. 1977)](conditional release on bond not custody); United States v. Peterson, 507 F.2d 1191, 1192 (D.C. Cir. 1974) ("custody" under § 3568 "means detention or imprisonment in a place of confinement"); Polakoff v. United States, 489 F.2d 727, 730 (5th Cir. 1974) (defendant's time on "highly restricted bond" not "custody" under § 3568). Although a criminal defendant is entitled credit under 18 U.S.C. § 3585 for time spent in detention prior to commencement of sentence, no such credit is allowed for time spent on conditional release.

888 F.2d at 655. The Tenth Circuit decided that a defendant would not be entitled to credit against his prison term for time spent in a halfway house, even though the defendant's liberty was restricted, because "this restriction does not equal the deprivation of liberty experienced by a person incarcerated in a jail facility." Id. at 656. See Dacosta v. Belaski, 968 F.2d 19 (Table), 1992 WL

121785, at *1 (10th Cir. June 3, 1992)("In United States v. Woods, 888 F.2d 653 (10th Cir.1989), cert. denied, 104 U.S. 1006 (1990), this court held that the statute does not entitle a prisoner to credit on his sentence for time spent in a halfway house, because the corresponding limitations on the defendant's conduct are not sufficiently restrictive to qualify as 'official detention.'"). It thus appears that the overwhelming weight of authority is that house arrest is not "official detention" for the purpose of earning credit against a term of imprisonment under 18 U.S.C. § 3583(b).

## ANALYSIS

The Court lacks jurisdiction to modify a previously imposed sentence. See United States v. Mendoza, 118 F.3d at 709; United States v. Blackwell, 81 F.3d at 947-48. In an apparent attempt to avoid appearing as though he seeks a modification of his sentence, Vigil styles his request as a motion for clarification. Although styled as a motion to clarify, Vigil is asking the Court to review whether the BOP erred by calculating Vigil's term of incarceration from a starting date of January 24, 2007, when Vigil was placed on house arrest, rather than April 9, 2007, when Vigil was placed in a federal correctional facility. See Motion ¶¶ 4-7, at 2. For an incarcerated prisoner, such a request is proper as a motion for habeas relief under 28 U.S.C. § 2241. See United States v. Storm, 281 Fed. Appx. at 832 ("[Storm's] claim . . . is not that his conviction and sentence were improper, which would fall within 28 U.S.C. § 2255, but that his sentence, as he understands it, is being improperly executed by the Bureau of Prisons. This falls squarely within § 2241."); Davis v. Roberts, 425 F.3d at 833 ("[A] challenge to the execution of a sentence should be brought under 28 U.S.C. § 2241."); Romandine v. United States, 206 F.3d at 736 ("Requests for sentence credit, or for recalculation of time yet to serve[,] . . . must be presented to the Attorney General (or her delegate, the Bureau of Prisons), and adverse decisions may be reviewed by an action under 28 U.S.C. § 2241."); Bradshaw v. Story, 86 F.3d at 166 ("A petition under 28 U.S.C. § 2241 attacks

the execution of a sentence . . . ."). Vigil was still incarcerated when he filed this motion, although he was released approximately three months thereafter. The Court thus construes this motion as one for habeas relief under 28 U.S.C. § 2241.

To be entitled to relief under § 2241, a prisoner must first exhaust his or her administrative remedies against the BOP. See Garza v. Davis, 596 F.3d at 1204; Fazzini v. Ne. Ohio Corr. Ctr., 473 F.3d at 233; Buchanan v. U.S. Bureau of Prisons, 133 Fed. Appx. at 467; Loewe v. Conner, 125 Fed. Appx. at 943; Williams v. O'Brien, 792 F.2d at 987. Vigil has done so in this case, as demonstrated by the denial of administrative appeal that he attached to the motion. See Motion Exhibit 1 ("Review of your file has confirmed the commencement date of your 37-month term is April 9, 2007. . . . Your appeal is denied."). Because Vigil has followed the necessary administrative process, the Court finds that, under normal circumstances, it would have jurisdiction to entertain Vigil's request.

The Court, however, finds that the calculation issue Vigil seeks to raise is moot. Vigil has completed his term of imprisonment and thus, regardless whether Vigil's term of imprisonment should have begun on January 24, 2007 or April 9, 2007, the Court cannot shorten his term of imprisonment to reflect the correct calculation. At the hearing on this motion, Sam Bregman, Vigil's attorney, requested the excess time served in prison be credited toward his term of supervised release, but the Supreme Court has concluded that such credits are inappropriate.

> The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration. . . . The Court of Appeals erred in treating respondent's time in prison as interchangeable with his term of supervised release.

United States v. Johnson, 529 U.S. 53, 59 (2000)(citing 18 U.S.C. § 3553(a)(2)(D) and United States

-17-

Sentencing Commission Guidelines Manual §§ 5D1.3(c), (d), (e) (Nov. 1998)). A Senate Report discussing supervised release, upon which the Supreme Court relied, declared that

> the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.

S. Rep. No. 98-225, p. 124 (1983). In accord with the Supreme Court's admonishment, and in agreement with the Supreme Court's reasoning, the Court finds that, even if Vigil spent three extra months incarcerated because of a BOP error, the Court could not credit those months against his term of supervised release. The issue therefore became moot when Vigil was released from prison at the end of his sentence, and, accordingly, the Court will deny this motion.[11]

**IT IS ORDERED** that the Defendant's Motion Requesting Clarification of Sentencing Order is denied as moot insofar as it asks the Court to clarify the starting date of the term of imprisonment that the Court imposed in the Judgment.

_____
UNITED STATES DISTRICT JUDGE

---

[11] While the Court need not and should not decide a moot issue, the Court notes that many federal courts of appeals have held or implied that house arrest does not qualify for credit toward a term of imprisonment under 18 U.S.C. § 3585(b). See Reno v. Koray, 515 U.S. at 52; United States v. Gordon, 130 Fed. Appx. at 24-25; United States v. Carpenter, 320 F.3d at 344; Logan v. Benov, 1999 WL 1054666, at *1; United States v. Lopez, 1997 WL 787175, at *1; United States v. Iversen, 90 F.3d at 1344-45; McAlpine v. Kindt, 1996 WL 71506, at *1; Rodriguez v. Lamer, 60 F.3d at 748; Edwards v. United States, 41 F.3d at 155-56; Fraley v. U.S. Bureau of Prisons, 1 F.3d at 925-26; United States v. Wickman, 955 F.2d at 593; Dacosta v. Belaski, 1992 WL 121785, at *1; United States v. Woods, 888 F.2d at 655-56.

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Jonathan M. Gerson
Manny Lucero
Steven C Yarbrough
John W. Zavitz
Laura Fashing
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*


Jason Bowles
B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

-- and --

Samuel H. Bregman, II
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*